## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
JAMES AND MELISSA ZEBROWSKI,    :
                                   :
    Plaintiffs,             :
                                   :    Civil No. 1:07-cv-05236 (JHR)
    v.                     :
                                   :    **OPINION**
WELLS FARGO BANK, N.A., AS SUCCESSOR  :
IN INTEREST TO WELLS FARGO HOME    :
MORTGAGE,                    :
                                   :
    Defendant.           :
_____:

Appearances:

Matthew B. Weisberg, Esq.
Prochniak Weisberg, P.C.
7 South Morton Avenue
Morton, PA 19070
Attorneys for Plaintiffs

Henry F. Reichner, Esq.
Nipun Jashbhai Patel, Esq.
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Attorneys for Defendant

**RODRIGUEZ, J.**

      This matter comes before the Court on a Motion for Judgment on the Pleadings

[Dock. Entry No. 20] filed by Defendant Wells Fargo Bank, N.A. (hereinafter

"Defendant") on April 3, 2009.  Plaintiffs James and Melissa Zebrowski (hereinafter

"Plaintiffs") filed their Amended Complaint [Dock. Entry No. 17] on February 13, 2009.

Defendant filed its Answer [Dock. Entry No. 18] on March 6, 2009.  In its Motion for

Judgment on the Pleadings, Defendant then sought dismissal of Counts VI ("Abuse of Process"), VII ("Violation of Civil Rights"), VIII ("Use of Process"), and IX ("Frivolous Action") of Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(c).  (See Am. Compl. ¶¶ 72-89.)  Plaintiffs opposed the motion through their Response [Dock. Entry No. 22] filed on April 20, 2009, asking the Court to instead grant Plaintiffs leave to amend their Amended Complaint.  The Court heard oral argument on the motion on July 22, 2009, and the record of that proceeding is incorporated here.

## I. Jurisdiction

Jurisdiction over this civil action is premised on federal question jurisdiction. See 28 U.S.C. § 1331.  Federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States."  Id.  Here, Plaintiffs pursue federal claims under 15 U.S.C. § 1681 (Count I: "Fair Credit Reporting Act"), 42 U.S.C. § 1983 (Count VI: "Violation of Civil Rights"), and 12 U.S.C. § 2602 (Count XI:[1] "Real Estate Settlement Procedures Act"), each of which is sufficient to confer federal question jurisdiction.  (See Am. Compl. ¶¶ 60-95.)  The Court then has supplemental jurisdiction over the remaining state-law claims.  See 28 U.S.C. § 1367(a).

Plaintiffs alternatively premise federal jurisdiction on diversity jurisdiction.[2]  See 28 U.S.C. § 1332.  This jurisdictional basis is deficient on the face of the Amended Complaint, as Plaintiffs do not explicitly allege their citizenship, but instead state that

---

[1] Plaintiffs incorrectly number the eleventh count as "Count II."  (See Am. Compl. ¶¶ 92-95.)

[2] Plaintiffs state, "Jurisdiction in this Honorable Court is based on federal question and/or diversity conferred by 28 U.S.C. § 1331 and 1332."  (See Am. Compl. ¶ 2.)

2

they reside in New Jersey.  (<u>See</u> Am. Compl. ¶ 4.)  Residence is not equivalent to citizenship.  <u>See</u> <u>Robertson v. Cease</u>, 97 U.S. 646, 648 (1878).  In order for a federal court to properly hear a case by diversity jurisdiction, the plaintiff must affirmatively allege the diverse citizenship of the opposing parties.  <u>See</u> 28 U.S.C. § 1332(a).  Not only is Plaintiffs' actual citizenship absent from the Amended Complaint, but Defendant's citizenship is also in dispute.  Plaintiffs allege that South Carolina is Defendant's state of incorporation and principal place of business.  (<u>See</u> Am. Compl. ¶ 5.)  Defendant, in its Answer, denies Plaintiffs' allegation of its citizenship, stating that it is "organized under the laws of the United States" and "its charter designates South Dakota as the location of its main office."  (<u>See</u> Answer ¶ 5.)  This assertion, however, fails to make clear Defendant's actual state of incorporation or principal place of business.  Nonetheless, a proper allegation of diversity of citizenship is unnecessary to justify federal jurisdiction, as this case is properly in federal court under federal question jurisdiction.

## II. Factual Background

In ruling on a motion for judgment on the pleadings, the court must accept as true all factual allegations in the plaintiff's complaint.  <u>See</u> <u>DiCarlo v. St. Mary Hosp.</u>, 530 F.3d 255, 262 (3d Cir. 2008) (internal citation omitted).  Plaintiffs commenced this action in this Court for damages allegedly incurred from Defendant's inaccurate mortgage services.  (<u>See</u> Am. Compl. ¶ 1.)  Plaintiffs' Complaint sets forth the following facts.

Plaintiffs procured a mortgage and note from Defendant on December 13, 2002.  (<u>Id.</u> ¶ 8.)  Defendant currently holds the loan documents.  (<u>Id.</u>)  The documents prescribed that Defendant would pay Plaintiffs' real estate taxes from an escrow

account.  (Id. ¶ 10.)  Defendant failed to timely pay the taxes in 2003 and 2005.  (Id. ¶ 11.)  As a result, Plaintiffs received delinquency notices, were charged late fees, and were forced to pay a sum to avoid a threatened tax sale of their property.  (Id. ¶¶ 12-13.)

Upon Plaintiffs' request, Defendant granted Plaintiffs an escrow deletion so that Plaintiffs could pay their own taxes.  (Id. ¶ 14.)  When Plaintiffs attempted to make their tax payment around April 2006, the township refused to accept the payment, as Defendant had already made three payments in March 2006 without Plaintiffs' permission.  (Id. ¶¶ 15-18.)  Defendant assured Plaintiffs that the matter would be investigated and easily solved.  (Id. ¶¶ 20-21.)  Plaintiffs attempted to make their monthly payment to Defendant around June 2006, but Defendant informed Plaintiffs that no payments would be accepted until an investigation was completed to determine the exact amount Plaintiffs would reimburse Defendant for the tax payment.  (Id. ¶¶ 23-26.)

About a month later, a representative named Mahn notified Plaintiffs that $6,017.98 would be due to reimburse Defendant for the tax payment, in addition to the scheduled monthly payment of $1,307.07.  (Id. ¶¶ 27-28.)  Mahn assured Plaintiffs that Defendant would not report any negative credit information to credit agencies, or place late fees or penalties on their account.  (Id. ¶ 29.)  Further, Mahn stated that Plaintiffs should disregard any loan modification paperwork they receive, as their account would be current once the payments were received.  (Id. ¶¶ 30-31.)

In accordance with these instructions, Plaintiffs sent the reimbursement payment to Defendant around July 15, 2006, and the monthly payment around August 4, 2006.  (Id. ¶¶ 33-34.)  Plaintiffs received a letter from Defendant around July 28, 2006

4

regarding a loan modification, dated July 10, 2006 and postmarked July 20, 2006.  (Id. ¶ 36.)  The due date on the letter was also July 20, 2006.  (Id.)  Around August 9, 2006, Plaintiffs were served with foreclosure paperwork.  (Id. ¶ 39.)  About a week later, Plaintiffs received letters from Defendant dated August 2, 2006 that the loan modification had been cancelled and foreclosure proceedings would begin.  (Id. ¶¶ 40-41.)

In an attempt to resolve the matter, Plaintiffs spoke to Defendant's representative, a supervisor named Revel, who advised Plaintiffs that Defendant had wrongfully paid the next quarter's taxes.  (Id. ¶¶ 42-44.)  Revel further advised that she would resolve the tax issue, send Plaintiffs proof of payments, and restore Plaintiffs' responsibility to pay the taxes.  (Id. ¶ 45.)  Although another representative indicated that Defendant had not received Plaintiffs' monthly payment and reimbursement, Plaintiffs' bank indicated that Defendant did in fact receive the funds.  (Id. ¶¶ 46-47.)

In August 2006, Defendant filed a foreclosure action against Plaintiffs.  (Id. ¶ 49.)  Defendant provided Plaintiffs with a new payoff figure in October 2006.  (Id. ¶ 51.)  In order to save their home from foreclosure, Plaintiffs paid $18,000, a higher amount than the payoff figure Defendant provided Plaintiffs in July 2006.  (Id. ¶¶ 52-54.)  The new amount included attorney fees, court costs, interest and/or late fees.  (Id. ¶ 55.)  Defendant did not remove the negative credit reporting information from Plaintiffs' account.  (Id. ¶ 57.)  As a result of Defendant's actions, Plaintiffs allege that they suffered the mortgage foreclosure, emotional distress, credit damage, financial loss, and inconvenience/embarrassment, among other injuries.  (Id. ¶ 59.)

5

### III. Standard of Review

<u>Motion for Judgment on the Pleadings</u>

After the pleadings are closed, a party may move for judgment on the pleadings. <u>See</u> Fed. R. Civ. P. 12(c). In order to be granted a judgment on the pleadings, the moving party must clearly establish that there are no material issues of fact and that the moving party is entitled to judgment in its favor as a matter of law. <u>See</u> <u>DiCarlo</u>, 530 F.3d at 259. In considering a motion for judgment on the pleadings, the court applies the same standard as that for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Turbe v. Gov't of the V.I.</u>, 938 F.2d 427, 428 (3d Cir. 1991).

Under Rule 12(b)(6), a complaint (or specific counts within a complaint) should be dismissed if the alleged facts, taken as true, fail to state a claim upon which relief can be granted. <u>See</u> Fed. R. Civ. P. 12(b)(6); <u>In re Warfarin Sodium Antitrust Litig.</u>, 214 F.3d 395, 397-98 (3d Cir. 2000) (internal citation omitted). The defendant, as the moving party, bears the burden of proving that the plaintiff did not state a claim for relief in the complaint. <u>See</u> <u>Hedges v. U.S.</u>, 404 F.3d 744, 750 (3d Cir. 2005) (internal citation omitted). While "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007) (internal citation omitted). The factual allegations must sufficiently "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." <u>Id.</u> at 555 (internal citations omitted).

The court, in determining whether or not a claim should be dismissed, examines only the facts alleged in the complaint and its attachments, excluding other parts of the record.[3]  See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  Further, the court accepts as true the well-pleaded allegations in the complaint, but does not accept "unsupported conclusory statements."  See DiCarlo, 530 F.3d at 262-63.  Relevant evidence and reasonable inferences drawn from the complaint are viewed in the light most favorable to the plaintiff.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).

The plaintiff need not plead evidence.  See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  Rather, the plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 547.  In considering a motion to dismiss, the court does not need to decide whether or not the plaintiff will prevail in the relevant claims.  See Watson v. Abington Township, 478 F.3d 144, 150 (3d Cir. 2007).  Ultimately, "a case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations."  Jordan, 20 F.3d at 1261 (internal citations omitted).

Once the pleadings are closed, a court may also grant the plaintiff leave to amend the complaint.  Leave to amend should be liberally granted when "justice so requires."

---

[3] As an exception to this general rule, the court may consider documents that are "integral to or explicitly relied upon" in the plaintiff's complaint.  See Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 256 (3d Cir. 2004).

See Fed. R. Civ. P. 15(a)(2);[4] Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000).  A district court, however, may deny leave to amend if amendment would cause undue delay or prejudice, or if amendment would be futile.  See Oran, 226 F.3d at 291 (internal citations omitted).

## IV. Discussion

Defendant seeks dismissal of Counts VI ("Abuse of Process"), VII ("Violation of Civil Rights"), VIII ("Use of Process"), and IX ("Frivolous Action") of Plaintiffs' Amended Complaint.[5]  (See Am. Compl. ¶¶ 72-89.)  In addition to these counts, Defendant states in its conclusion that it seeks dismissal of Counts II ("Fraud") and IV ("Negligence") of Plaintiffs' Amended Complaint.  (See id. at ¶¶ 62-69; Mem. Supp. Mot. J. Pldgs. p. 7.)  These additional counts, however, are neither mentioned nor discussed in any other place in Defendant's submitted papers.  Plaintiffs, therefore, did not respond to these particular counts in their Response.  This Court confirmed at oral argument that Defendant did not intend to include these two counts in its Motion for Judgment on the Pleadings.

### A. Abuse of Process

As part of its Motion for Judgment on the Pleadings, Defendant seeks to dismiss Count VI ("Abuse of Process")[6] of Plaintiffs' Amended Complaint.  (See Am. Compl. ¶¶

---

[4] Rule 15(a) is effective until December 1, 2009, absent contrary Congressional action.  See Fed. R. Civ. P. 15 advisory committee's note.

[5] In their Amended Complaint, Plaintiffs allege eleven counts, the aforementioned four of which are relevant for this motion.  (See Am. Compl. ¶¶ 60-95.)

[6] Defendant mistakenly refers to this claim as "Count X" in the last sentence of its section on the abuse of process claim.  (See Mem. Supp. Mot. J. Pldgs. p. 6.)

72-74.)  In this count, Plaintiffs claim that "[t]he filing of the Underlying Action was intentional, wanton, malicious and with reckless disregard of the rights of Plaintiff."[7] (Id. at ¶ 74.)  Defendant contends that the abuse of process claim should be dismissed pursuant to Rule 12(c).  See Fed. R. Civ. P. 12(c).

To prove Defendant committed the tort of abuse of process,[8] Plaintiffs must demonstrate Defendant's: (1) ulterior motive; and (2) "further act after the issuance of process representing the perversion of the legitimate use of the process."  See Tare v. Bank of Am., No. 07-583, 2009 WL 799236, at *7 (D.N.J. Mar. 24, 2009) (citing Simone v. Golden Nugget Hotel & Casino, 844 F.2d 1031, 1036-37 (3d Cir. 1988)).[9]  Such perversion exists where the process is used to "coerce or oppress" the plaintiff or the process is used in a manner not contemplated by law.  See Simone, 844 F.2d at 1036; Tedards v. Auty, 557 A.2d 1030, 1035 (N.J. Super. Ct. App. Div. 1989) (internal citation omitted).  Further, "where there is a genuine issue as to whether a defendant's 'further acts' were maliciously intended as an abuse of process, the plaintiff may demonstrate that the defendant had secured issuance of the process without reason or probable cause as evidence that his ultimate intent was to use it for a purpose ulterior to the one for which it was designed."  Tedards, 557 A.2d at 1035 (citing Soos v. Soos, 185 A. 386 (N.J. Ch. 1936)).  Moreover, the ulterior motive can be inferred from the "improper act."  See

---

[7] The Court assumes Plaintiffs meant to refer here to both Plaintiffs James and Melissa Zebrowski, and not a singular plaintiff.  (See id. at ¶ 74.)

[8] This tort is also referred to as "misuse of process" and "malicious abuse of process." See Tare v. Bank of Am., No. 07-583, 2009 WL 799236, at *6-7 (D.N.J. Mar. 24, 2009).

[9] Tare incorrectly spells the appellant's surname as "Simon," but the spelling is corrected in this citation for the sake of clarity.  See id.

9

Rojas v. City of New Brunswick, No. 04-3195, 2008 WL 2355535, at *30 (D.N.J. June 4, 2008) (citing Ash v. Cohn, 194 A. 174, 176 (N.J. 1937)).[10]  If the act is proper, however, the motive is immaterial.  See Rojas, 2008 WL 2355535, at *30 (internal citation omitted).  The improper further act is crucial, as "[i]n the absence of some coercive or illegitimate use of the judicial process, there can be no claim for its abuse."  See id. (citing Penwag Prop. Co. v. Landau,  372 A.2d 1162, 1165 (N.J. Super. Ct. App. Div. 1977)).

Defendant contends that the abuse of process claim should be dismissed because Plaintiffs have not alleged that Defendant committed any further acts after the underlying foreclosure action began.  (See Mem. Supp. Mot. J. Pldgs. p. 6.)  Plaintiffs counter that Defendant's "'further acts' consisted of prolonging the foreclosure action, knowing it was baseless, to induce Plaintiffs to pay arrearages, late fees, and penalties that would not have existed had it not been for [Defendant's] actions."  (See Pls.' Resp. Def.'s Mot. J. Pldgs. p. 8.)[11]

Where a defendant carries out process to its authorized conclusion, albeit with bad intentions, there is no valid claim for abuse of process.  See Gambocz v. Apel, 245

---

[10] Although the parties have not explicitly discussed the appropriate choice of law for this case, New Jersey state law is properly applied for the torts of abuse and use of process, as the alleged torts occurred in New Jersey and Plaintiffs appear to be New Jersey citizens, whom the state has an interest in protecting from conduct of this nature.  See Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 540 (E.D.Pa. 1982) (discussing appropriate application of Pennsylvania state law for malicious abuse and use of process claims in absence of direct choice of law discussion from parties); see also Biase v. Kaplan, 852 F. Supp. 268, 281 (D.N.J. 1994) (internal citations omitted) ("Abuse of process is a tort actionable under state common law.").

[11] As Plaintiffs did not independently insert page numbers in their Response, those used in this opinion are derived from the CM/ECF header.  (See Pls.' Resp. Def.'s Mot. J. Pldgs.)

A.2d 507, 509 (N.J. Super. Ct. App. Div. 1968).  Here, Plaintiffs do allege more than Defendant's mere carrying out of process; they allege Defendant prolonged the process in an attempt to illegitimately make more money from the foreclosure action.  Plaintiffs, however, must allege an improper further act, which includes "attachment, execution, garnishment, sequestration proceedings, arrest, and criminal prosecution." See D&D Assocs., Inc. v. Bd. of Educ. of North Plainfield, No. 03-1026, 2007 WL 4554208, at *31 (D.N.J. Dec. 21, 2007) (internal citation omitted).  Although Plaintiffs contend Defendant continued the foreclosure action in an "impermissible" manner by being "unresponsive" to Plaintiffs and withholding the pay-off figure until October, Plaintiffs do not allege any specific use of process by Defendant that could constitute a "further act" required for the tort of abuse of process.  (See Pls.' Resp. Def.'s Mot. J. Pldgs. p. 8.) For one, Defendant did not use process to seize Plaintiffs' home.

Process, as defined narrowly in the context of the tort of abuse of process, refers not to "all proceedings in a legal action," but rather to "certain products of litigation that a court issues, such as a 'summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders.'" See Jewett v. IDT Corp., No. 04-1454, 2007 WL 2688932, at *7 (D.N.J. Sept. 11, 2007) (citing Ruberton v. Gabage, 654 A.2d 1002, 1005 (N.J. Super. Ct. App. Div. 1995)).  Here, Plaintiffs do not allege particular "products of litigation" that Defendant abused, but rather refer to Defendant's abuse of the "Underlying Action" as a whole.  See id.; (Am. Compl. ¶ 74.)

In Tedards, the court found "further acts" to exist where the defendant, after a writ had been issued, "knowingly and materially misrepresented to a judge the record of

the family action to justify setting bail in the amount of the wife's demands and used the threat of reincarceration under the writ as a means of extorting a settlement and payment of counsel fees from plaintiff." See 557 A.2d at 1035.  Where misrepresentations to the court were not used to coerce or injure the plaintiff, a court sitting in this district did not find requisite "further acts."  See Component Hardware Group, Inc. v. Trine Rolled Moulding Corp., No. 05-891, 2007 WL 2177667, at *5 (D.N.J. July 27, 2007).  Here, Plaintiffs do not allege affirmative further acts comparable to affirmative misrepresentations made to the court.  See id.  Rather, Plaintiffs seem to allege the absence of affirmative acts in Defendant's effort to prolong the foreclosure action.  (See Pls.' Resp. Def.'s Mot. J. Pldgs. p. 8.)[12]

Courts in other states containing the same basic elements for an abuse of process claim have analyzed the claim in the particular context of a foreclosure action.  The appropriate question is not the legitimacy of the entire foreclosure action, but whether or not Defendant "wielded legal process abusively in the course of prosecuting the foreclosure."  See Shapiro v. Haenn, 222 F. Supp. 2d 29, 48 (D. Me. 2002).  In a District Court of Maine case, the court analyzed the defendant's alleged abuse of the legal procedures of deposition and amendment, not the entire foreclosure action.  See id.  Moreover, a bank's use of process to foreclose on its mortgage, even with bad motives, was a "legitimate use of the judicial system."  See Broadhurst v. Moenning, 633 N.E.2d

---

[12] More specifically, Plaintiffs contend, "Movant was unresponsive to Plaintiffs . . . . Movant refused to offer Plaintiffs any sort of pay-off figure until October . . . .  Movant's 'further acts' consisted of prolonging the foreclosure action, knowing it was baseless, to induce Plaintiffs to pay arrearages, late fees, and penalties that would not have existed had it not been for Movant's actions."  (See id.)

326, 333 (Ind. Ct. App. 1994).  Improper further acts after the initiation of the foreclosure proceeding must be pled, such as "some kind of writ."  See Atkins v. Ritchie, No. LC-116, 1980 WL 143159, at *2 (Va. Cir. Ct. Nov. 6, 1980).  When a plaintiff, like here, alleged that a foreclosure proceeding was carried out to force him to pay a sum he did not owe, a court found there was no claim for abuse of process.  See Simpson v. Jones, 186 S.E. 558, 560 (Ga. 1936).  Another court, however, did find abuse of process when the plaintiffs paid a greater sum than what they actually owed in a foreclosure action.  See Blair v. Maxbass Sec. Bank of Maxbass, 176 N.W. 98, 100 (N.D. 1919). Importantly, however, in addition to this improper action, the defendant also caused a warrant of seizure to be issued, serving as "process" for the purposes of the tort.  See id. Here, Plaintiffs do not allege any such process that has been recognized by courts as constituting sufficient "further acts" in the context of a foreclosure action.  See id. Alleging no further act, Plaintiffs claim for abuse of process fails as a matter of law.[13]  See Tare, 2009 WL 799236, at *7.

Plaintiffs have failed to allege any specific use of process by Defendant in the underlying foreclosure action that could satisfy the "further act" element of the tort of abuse of process.  See Jewett, 2007 WL 2688932, at *7.  Viewing the facts of the Amended Complaint in the light most favorable to Plaintiffs, Plaintiffs have not set forth

---

[13] The "ulterior motive" element of the abuse of process claim is not in dispute.  See Tare, 2009 WL 799236, at *7.  Moreover, if there is no improper "further act," the motive is immaterial.  See Rojas, 2008 WL 2355535, at *30 (internal citation omitted).  Nonetheless, Plaintiffs properly plead the "ulterior motive" requirement.  See Tare, 2009 WL 799236, at *7; (Am. Compl. ¶¶ 74, 86 ("The filing of the Underlying Action was intentional, wanton, malicious and with reckless disregard of the rights of Plaintiff . . . . Defendants acted maliciously and for the primary purpose of harassing Plaintiffs by the commencement, continuation, and prosecution of the Underlying Action.").)

facts that would tend to show that Defendant committed a requisite further act after the issuance of the foreclosure action "representing the perversion of the legitimate use of the process." See Oshiver, 38 F.3d at 1384; Tare, 2009 WL 799236, at *7. Although leave to amend should be freely given when "justice so requires," see Fed. R. Civ. P. 15(a)(2); Oran, 226 F.3d at 291, because Plaintiffs are unable to allege adequate process to constitute a "further act" by Defendant, the Court will disallow amendment, as amendment would be futile. See Oran, 226 F.3d at 291 (internal citations omitted).

Accordingly, because Plaintiffs do not properly plead the "further act" requirement, Plaintiffs' abuse of process claim fails as a matter of law, see Tare, 2009 WL 799236, at *7, and Plaintiffs' abuse of process claim will be dismissed.

### B. Violation of Civil Rights

Defendant, in its Motion for Judgment on the Pleadings, also seeks to dismiss Count VII ("Violation of Civil Rights") of Plaintiffs' Amended Complaint. (See Am. Compl. ¶¶ 75-78.) This count states that "Defendant made use of the Gloucester County Clerk, Sheriff, and Superior Court" as "state actors" to "deprive Plaintiffs of their rights . . . pursuant to U.S. Const. Amend. I, IV, and XIV, and their state corollaries," thus violating 42 U.S.C. § 1983. (See id. ¶¶ 76-78.) Defendant contends that the violation of civil rights claim should be dismissed pursuant to Rule 12(c) so that judgment is entered in Defendant's favor for that count as a matter of law. See Fed. R. Civ. P. 12(c); DiCarlo, 530 F.3d at 259.

When analyzing a claim under 42 U.S.C. § 1983, the proper starting point is the language of the statute itself:

Every person who, under color of any statute, ordinance, regulation, custom,

14

> or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Under Section 1983, a plaintiff must plead two elements: (1) deprivation of a constitutional right; and (2) that the constitutional deprivation was caused by a person acting under the color of state law.  See Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (internal citation omitted).  Defendant contends that Plaintiffs' violation of civil rights claim fails as a matter of law because the foreclosure action filed by Defendant does not constitute state action in order to satisfy the second element of Section 1983.  See id.; (Mem. Supp. Mot. J. Pldgs. p. 5.)  In opposition, Plaintiffs contend that Defendant, albeit a private corporation, is considered a state actor for the purposes of Section 1983.[14]

A private party can be liable under Section 1983 when it deprives a person of a constitutional right while acting under color of law.  See Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995) (internal citation omitted).  The phrase "under color of law" for Section 1983 is parallel to "state action" for the Fourteenth Amendment.  See id. (internal citations omitted).  Under this standard, the state must be "responsible" for the plaintiff's constitutional injury.  See id. at 1141-42 (internal citations omitted).  There must be a "sufficiently close nexus between the State and the challenged action . . . so

---

[14] Plaintiffs state, "By foreclosing on a mortgage arrearage which had been cured or did not exist, Defendant had violated Plaintiffs' Civil Rights by formally instituting and prosecuting a foreclosure which deprived Plaintiffs of free and marketable title as well as forever damaged the credit and pre-foreclosure Complaint opportunity to cure which the mortgage contract guarantees."  (See Pls.' Resp. Def.'s Mot. J. Pldgs. p. 9.)

that the action . . . may be fairly treated as that of the State itself." See id. at 1142

(quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).

     To support their position that Defendant acted "under color of law" in the

underlying foreclosure action, Plaintiffs cite cases articulating when a private party may

be considered a state actor under Section 1983. (See Pls.' Resp. Def.'s Mot. J. Pldgs. p.

9.) Plaintiffs, however, make a significant error in misquoting one such case as, "It is

settled that private persons can be considered state actors for purposes of section 1983

so long as the state continually contributes to the constitutional deprivation." (See id.)

The correct quote is as follows: "It is settled that private persons can be considered state

actors for purposes of section 1983, so long as the state *significantly* contributes to the

constitutional deprivation." See Grillo v. BA Mortgage, LLC, No.

Civ.A.2:04CV02897LDD, 2004 WL 2250974, at *6 (E.D.Pa. Oct. 4, 2004) (emphasis

added) (internal citation omitted). The omitted word, "significantly," indicates the

important role that the state must play in the constitutional deprivation in order for the

private conduct to be attributable to the state. See id. Notably, the internal citation

points to a Supreme Court case "requiring that [the] deprivation be caused by [the]

exercise of [some] right created by [the] state and that [the] private party act together or

obtain significant aid from state official[s]." See id. (citing Lugar v. Edmondson Oil Co.,

457 U.S. 922, 937 (1982)). In Grillo, the court, in finding proper state action for the

Section 1983 claim to survive a motion to dismiss, noted that the state action pled by the

plaintiffs was not the defendant's "use of the judicial process to validate the sheriff's

sale," but rather the defendant's "enlistment of the 'compulsive power of the local

Sheriff' after unilaterally and without notice increasing the amount of the default

judgment." See id. (internal citation omitted).  Thus, while Plaintiffs are correct that "Grillo specifically speaks to court action and the use of the Sheriff," it is not clear that these bare facts alone constitute sufficient "state action" for a Section 1983 claim to survive a motion to dismiss.  (See Pls.' Resp. Def.'s Mot. J. Pldgs. p. 9.)

Even without the Sheriff's contribution by "service of process," Plaintiffs contend that Defendant's "act of filing alone" is sufficient for Plaintiffs' violation of civil rights claim to withstand the motion.  (See id.)  Attempting to support this contention, Plaintiffs cite to a Third Circuit case where a lessee pursued suit against lessors for deprivation of due process rights by executing on a judgment by confession without pre-deprivation notice or hearing. See Jordan, 20 F.3d at 1253.  The court found that the entry of confessed judgment was not sufficient state action for a Section 1983 claim, but that "a judgment creditor who uses Pennsylvania's procedure for *executing* on a confessed judgment acts under color of law and becomes a state actor" for a cognizable Section 1983 claim.  See id. at 1266-67 (emphasis added).  The Third Circuit reasoned that "a private individual who enlists the compulsive powers of the state to seize property by executing on a judgment without pre-deprivation notice or hearing acts under color of law and so may be held liable under section 1983 if his acts cause a state official to use the state's power of legal compulsion to deprive another of property."  Id. at 1267.  Thus, Jordan requires more than Defendant's mere act of filing for an adequately pled Section 1983 claim.  See id.

Interestingly, Plaintiffs state that "[i]n applying Section 1983 for improper court action, this District has held a pertinently identical creditor liable for civil rights violations arising from instant creditor's misuse of process," but fail to cite cases from

the District of New Jersey, instead citing Pennsylvania cases, including <u>Grillo</u>.  <u>See</u> 2004

WL 2250974; (Pls.' Resp. Def.'s Mot. J. Pldgs. p. 9.)[15]

Defendant, however, is the party bearing the burden to prove that Plaintiffs do

not state a claim for relief in their Amended Complaint.  <u>See</u> <u>Hedges</u>, 404 F.3d at 750.

Defendant contends that Plaintiffs' violation of civil rights claim must fail because a

mortgage foreclosure action is not state action for the purposes of a Section 1983 claim.

(<u>See</u> Mem. Supp. Mot. J. Pldgs. p. 5.)  Defendant points to three district court cases

supporting this contention.  <u>See</u> <u>Nanya-Nashut ex rel. Hand v. Centex Home Equity</u>

<u>Corp.</u>, No. Civ.A. 03-3661, 2003 WL 22871667, at *2 (E.D.Pa. Dec. 2, 2003) (hereinafter

"Nanya I"); <u>Nanya-nashut ex rel. Hand v. BankOne Nat'l Ass'n Tr.</u>, No. CIV.A. 03-4022,

2003 WL 22078022, at *3 (E.D.Pa. Sept. 9, 2003) (hereinafter "Nanya II"); <u>Shipley v.</u>

<u>First Fed. Sav. & Loan Ass'n of Del.</u>, 703 F. Supp. 1122, 1125-31 (D. Del. 1988), <u>aff'd</u>, 877

F.2d 57 (3d Cir. 1989);[16] (Mem. Supp. Mot. J. Pldgs. p. 5.)  In <u>Shipley</u>, the plaintiffs

claimed that a bank and its attorney violated the plaintiffs' due process rights by using a

state court rule providing for constructive service of process in a mortgage foreclosure

action.  <u>See</u> 703 F. Supp. at 1125.  Applying <u>Lugar</u>, the court held that neither the bank

---

[15] Plaintiffs also cite Pennsylvania state court cases for this proposition.  <u>See</u> <u>Nationsbanc Mortgage Corp. v. Grillo</u>, 827 A.2d 489, 492-93 (Pa. Super. Ct. 2003); <u>Morgan Guar. Trust Co. of N.Y. v. Mowl</u>, 705 A.2d 923, 926 (Pa. Super. Ct. 1998); <u>Union Nat'l Bank of Pittsburgh v. Ciongoli</u>, 595 A.2d 179, 182 (Pa. Super. Ct. 1991); (Pls.' Resp. Def.'s Mot. J. Pldgs. p. 9.)  While these cases find the mortgagees' attempt to use process against the mortgagors improper and unconstitutional, these cases, importantly, do not address Section 1983 claims. <u>See</u> <u>id.</u>

[16] The Third Circuit decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.  <u>See</u> <u>Shipley v. First Fed. Sav. & Loan Ass'n of Del.</u>, 877 F.2d 57 (3d Cir. 1989).  Although the decision is not binding on this Court, it has persuasive value.

nor the attorney's actions could be characterized as state action for a Section 1983 claim.
See id. at 1126-27.  The court reasoned that because there was no evidence of conspiracy
or agreement between the bank/attorney and state officials to violate the plaintiffs' civil
rights, the bank and attorney were not state actors for a valid Section 1983 claim.  See id.
at 1128-29.  Further, neither private party imposed its judgment upon that of a state
official.  See id. at 1130-31.  Here, Plaintiffs do not allege any facts indicating a
conspiracy between Defendant and state officials to violate Plaintiffs' civil rights or an
imposition of Defendant's judgment upon state officials.  See id.  Thus, Defendant's
actions are not attributable to the state for a cognizable Section 1983 claim.  See id.; see
also Nanya I, 2003 WL 22871667, at *2 (internal citation omitted) (dismissing plaintiffs'
Section 1983 claim finding "[e]ven when a bank and an attorney utilize state foreclosure
procedures, that will not constitute state action"); Nanya II, 2003 WL 22078022, at *3
(internal citation omitted) (same).

  In addition to the aforementioned cases cited by Defendant, the Fifth Circuit has
similarly held that a foreclosure proceeding is not sufficient state action for a cognizable
Section 1983 claim.  See Earnest v. Lowentritt, 690 F.2d 1198, 1199-1200 (5th Cir.
1982).  The Fifth Circuit persuasively reasoned, "The Supreme Court has characterized
the private use of state legal procedures for purposes of the Fourteenth Amendment as
attributable to the state only in situations where the state has created a system which
allows state officials to attach property on ex parte application . . . .  It is in these ex
parte, prejudgment situations that the courts have found the state is itself participating
in the deprivation of property, and the constitutional requirements of due process
apply."  Id. at 1201 (internal citations omitted).  Unlike an ex parte situation, the

initiation of a foreclosure proceeding pursuant to a mortgage does not implicate similar "authority of state law." See id. Otherwise, every foreclosure action between private parties would "transform" into "state action of constitutional dimensions." See id. at 1202. Therefore, Plaintiffs' violation of civil rights claim does not plead adequate "state action" to withstand Defendant's Motion for Judgment on the Pleadings. See id.

As a crucial element of the Section 1983 claim cannot be satisfied under the facts of this case, amendment would be futile. See Oran, 226 F.3d at 291 (internal citations omitted). Accordingly, Plaintiffs' violation of civil rights claim will be dismissed.

## C. Use of Process

In Count VIII of their Amended Complaint ("Use of Process"), Plaintiffs allege Defendant initiated the foreclosure action without probable cause and with malice. (See Am. Compl. ¶ 80.) Plaintiffs also allege that the foreclosure action terminated in Plaintiffs' favor and that Plaintiffs suffered a special grievance in the form of lis pendens and other infringement on their property. (See id. ¶¶ 81-82.) Defendant contends that Plaintiffs' use of process claim should be dismissed pursuant to Rule 12(c) because the foreclosure action did not terminate in Plaintiffs' favor. See Fed. R. Civ. P. 12(c); (Mem. Supp. Mot. J. Pldgs. p. 4.)

To state a claim for malicious use of process,[17] Plaintiffs must allege sufficient facts that: (1) Defendant instituted the foreclosure action against Plaintiffs; (2)

---

[17] Plaintiffs' use of process claim is commonly known as "malicious use of process" and will hereinafter be referred to as such. See LoBiondo v. Schwartz, 970 A.2d 1007, 1022 (N.J. 2009). Malicious use of process is the civil equivalent of malicious prosecution, the latter providing a remedy for harm caused by the institution of a baseless criminal action. See id. (internal citations omitted).

Defendant was motivated by malice; (3) Defendant lacked probable cause; (4) the foreclosure action terminated favorably to Plaintiffs; and (5) Plaintiffs suffered a special grievance.  See Venuto v. Carella, Byrne, Bain, Gilfillan, Cecchi & Stewart, P.C., 11 F.3d 385, 388-89 (3d Cir. 1993) (internal citations omitted); LoBiondo v. Schwartz, 970 A.2d 1007, 1022-23 (N.J. 2009) (internal citation omitted).  While evidence of one factor can be relevant to proving another factor, proof of each element is crucial to a successful malicious use of process claim.  See LoBiondo, 970 A.2d at 1022 (internal citations omitted).  As a claim in and of itself, malicious use of process is disfavored, "as people should not be inhibited in seeking redress in the courts."  See Penwag, 372 A.2d at 1266 (internal citation omitted).

In its Rule 12(c) motion, Defendant contends that Plaintiffs' malicious use of process claim fails as a matter of law because the "favorable termination" element cannot be satisfied under the facts of this case.  See Fed. R. Civ. P. 12(c); (Mem. Supp. Mot. J. Pldgs. p. 4.)  More specifically, Defendant contends that Plaintiffs did not prevail in the underlying foreclosure action because Plaintiffs did not appear, Plaintiffs paid money to Defendant to avoid the sale of their property, and judgment was not entered in Plaintiffs' favor.  (See Mem. Supp. Mot. J. Pldgs. p. 4.)  Plaintiffs counter that the foreclosure action terminated in their favor because Plaintiffs successfully maintained possession of the title to the premises at the conclusion of the foreclosure proceeding. (See Pls.' Resp. Def.'s Mot. J. Pldgs. p. 7.)

Neither party cites a case analogous to the particular facts surrounding Plaintiffs' malicious use of process claim in the context of an underlying foreclosure action. Rather, the parties reference cases setting forth the aforementioned elements underlying

a malicious use of process claim.  See Ash, 194 A. at 176; Tedards, 557 A.2d at 1034;

Penwag, 372 A.2d at 1266; (Mem. Supp. Mot. J. Pldgs. p. 4); (Pls.' Resp. Def.'s Mot. J.

Pldgs. pp. 7-8.)

      The Third Circuit has stated that the "very purpose of a foreclosure proceeding is

to put an end to the right to redeem and thus to make the conveyance to the mortgagee

absolute and unconditional."[18]  See Brown v. United States, 95 F.2d 487, 489 (3d Cir.

1938).  In a foreclosure action, the Court of Chancery of New Jersey stated that "[t]he

appropriate end of a foreclosure suit is to bar the equity of redemption."[19]  See Provident

Mut. Life Ins. Co. of Phila. v. Doughty, 8 A.2d 722, 722 (N.J. Ch. 1939).  Under this view,

Plaintiffs' contention that the foreclosure action terminated in their favor is not

completely without merit, as Plaintiffs did succeed in maintaining possession of their

property at the conclusion of the foreclosure action.  (See Pls.' Resp. Def.'s Mot. J. Pldgs.

p. 7.)

      Examining a malicious use of process claim in the context of a foreclosure action,

however, courts in states containing the same "favorable termination" requirement as

New Jersey for a malicious use of process claim hold that a party's payment of debt in a

foreclosure proceeding does not constitute termination in favor of that party.  See

LoBiondo, 970 A.2d at 1022.  Where a debtor settled with a bank by paying the full

amount demanded in the bank's suit, a court found that there was no favorable

---

[18] This statement was made in the context of a suit to recover overpayment of income taxes, not in the context of a malicious use of process claim.  See Brown v. United States, 95 F.2d 487, 489 (3d Cir. 1938).

[19] Similarly, this case did not consider a malicious use of process claim.  See Provident Mut. Life Ins. Co. of Phila. v. Doughty, 8 A.2d 722, 722 (N.J. Ch. 1939).

termination to serve as the basis for the debtor's malicious use of process claim.[20]  See Mills County State Bank v. Roure, 291 N.W.2d 1, 4 (Iowa 1980).  The court reasoned, "It could not have been a more unfavorable result for [the debtor], unless, perhaps, the matter had proceeded through trial and he had been forced to pay court costs and statutory attorney's fees in addition to the amount of the bank's prayer."  Id.  Further, a court allowed a malicious use of process claim to survive summary judgment when the facts presented the possibility that the foreclosure action was withdrawn as to the particular plaintiff *before* payment was made to the defendants.[21]  See Santone v. Huntington Condo. Ass'n, No. CV970347410, 2002 WL 1951790, at *3-4 (Conn. Super. Ct. July 24, 2002); see also Shapiro, 222 F. Supp. 2d at 46 (internal citations omitted) (holding that dismissal of foreclosure proceedings after plaintiff's payment in full of disputed debt is not termination in favor of plaintiff); Wilson v. Fifth Third Bank of S. Ohio, No. CA94-01-001, 1994 WL 250144, at *1 (Ohio Ct. App. June 13, 1994) (holding that no favorable termination exists where bank dismissed foreclosure action and released attached property after debtor paid past-due note in full); Clark v. Everett, 2 Grant 416, 416 (Pa. 1853) (holding that party who was arrested on a debt not due, but who compromised by paying money without objection, is precluded from sustaining malicious use of process claim).

Here, Plaintiffs paid $18,000 "in an effort to save their home from the wrongful

---

[20] This case termed the tort as "malicious prosecution."  See Mills County State Bank v. Roure, 291 N.W.2d 1, 4 (Iowa 1980).

[21] In Connecticut, the tort is termed "vexatious litigation."  See Santone v. Huntington Condo. Ass'n, No. CV970347410, 2002 WL 1951790, at *1 (Conn. Super. Ct. July 24, 2002).

foreclosure." (<u>See</u> Am. Compl. ¶¶ 52-55.) While Plaintiffs may be correct that the centrality of the foreclosure action is the title to their property, this does not necessarily mean that possession of the premises following the foreclosure proceeding equates favorable termination for the purposes of their malicious use of process claim. <u>See</u> <u>Brown</u>, 95 F.2d at 489; <u>Provident</u>, 8 A.2d at 722. As Plaintiffs were forced to pay a sum of money to keep their home, the underlying foreclosure action does not appear to have terminated in their favor. <u>See</u> <u>Shapiro</u>, 222 F. Supp. 2d at 46; <u>Santone</u>, 2002 WL 1951790, at *3-4; <u>Mills</u>, 291 N.W.2d at 4; <u>Wilson</u>, 1994 WL 250144, at *1; <u>Clark</u>, 2 Grant at 416. Rather, the more reasonable conclusion is that the foreclosure action terminated unfavorably to Plaintiffs. <u>See</u> <u>id.</u> Therefore, the "favorable termination" element of Plaintiffs' malicious use of process claim is not satisfied, and the claim fails as a matter of law. <u>See</u> <u>LoBiondo</u>, 970 A.2d at 1022.

Plaintiffs have been unable to provide any additional facts regarding the underlying foreclosure action that would indicate that the proceeding terminated in Plaintiffs' favor. Although leave to amend should be freely given when "justice so requires," <u>see</u> Fed. R. Civ. P. 15(a)(2); <u>Oran</u>, 226 F.3d at 291, the Court will dismiss the malicious use of process claim, as amendment of that claim would be futile. <u>See</u> <u>Oran</u>, 226 F.3d at 291 (internal citations omitted); <u>LoBiondo</u>, 970 A.2d at 1022.

### D. Frivolous Action

In Count IX of their Amended Complaint ("Frivolous Action"), Plaintiffs allege that Defendant initiated and continued the foreclosure action without probable cause and for malicious purposes. (<u>See</u> Am. Compl. ¶¶ 83-89.) Defendant, in its Rule 12(c) motion, contends that Plaintiffs' frivolous action claim fails as a matter of law for the

following reasons: (1) Plaintiffs did not prevail in the foreclosure action; (2) Plaintiffs did not incur attorneys' fees or litigation costs to constitute recoverable damages; and (3) Plaintiffs' frivolous action claim must have been brought in the foreclosure action and cannot be pursued in the instant proceeding. (<u>See</u> Mem. Supp. Mot. J. Pldgs. p. 4.) Plaintiffs do not object to these arguments, but instead concede withdrawal of their frivolous action claim. (<u>See</u> Pls.' Resp. Def.'s Mot. J. Pldgs. p. 6.) Accordingly, Plaintiffs' frivolous action claim will be dismissed.

## V. Conclusion

For the reasons stated herein, Plaintiffs' abuse of process, violation of civil rights, malicious use of process, and frivolous action claims are dismissed. The abuse of process, violation of civil rights, and malicious use of process claims fail as a matter of law, and both parties concede dismissal of the frivolous action claim. As amendment would be futile, leave to amend Plaintiffs' Amended Complaint is denied. Accordingly, Defendant's Motion for Judgment on the Pleadings is granted.

An appropriate ORDER shall follow.

/s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
United States District Judge

Date: September 17, 2009

.

25