## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **JAMES AND MELISSA ZEBROWSKI,** | : | **DOCUMENT ELECTRONICALLY FILED** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 07-5236** |
| | : | |
| **WELLS FARGO BANK, N.A., as successor in interest to Wells Fargo Home Mortgage,** | : | |
| | : | |
| **Defendant.** | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2009, upon consideration of the Motion for Summary Judgment of Defendant Wells Fargo Bank, N.A., it is hereby **ORDERED** and **DECREED** that said Motion is **GRANTED**.  Summary judgment is hereby entered in favor of Defendant and against Plaintiffs.

BY THE COURT:

_____
Rodriguez, J.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **JAMES AND MELISSA ZEBROWSKI,** | : | **DOCUMENT ELECTRONICALLY FILED** |
| **Plaintiffs,** | : | |
| **v.** | : | **CIVIL ACTION NO. 07-5236** |
| **WELLS FARGO BANK, N.A., as successor in interest to Wells Fargo Home Mortgage,** | : | **MOTION FOR SUMMARY JUDGMENT** |
| **Defendant.** | : | |

## MOTION FOR SUMMARY JUDGMENT
## OF DEFENDANT WELLS FARGO BANK, N.A.

Defendant Wells Fargo Bank, N.A. hereby moves this Court to enter summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56.  The grounds for this Motion are set forth in the accompanying Memorandum of Law, and the exhibits attached thereto, all of which are incorporated herein by reference in their entirety.

Respectfully submitted,

_s/ Nipun J. Patel_
Henry F. Reichner
Nipun J. Patel
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone:  (215) 851-8100

_Attorneys for Defendant_
_Wells Fargo Bank, N.A._

Dated: October 30, 2009

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JAMES AND MELISSA ZEBROWSKI,** : | **DOCUMENT ELECTRONICALLY** |
| : | **FILED** |
| **Plaintiffs,** : | |
| : | |
| **v.** : | **CIVIL ACTION NO. 07-5236** |
| : | |
| **WELLS FARGO BANK, N.A., as successor** : | |
| **in interest to Wells Fargo Home Mortgage,** : | |
| : | |
| **Defendant.** : | |

**MEMORANDUM OF LAW IN SUPPORT**
**OF THE MOTION FOR SUMMARY JUDGMENT**
 **OF DEFENDANT WELLS FARGO BANK, N.A.** 

**REED SMITH LLP**
*Formed in the State of Delaware*
Henry F. Reichner, Esquire
Nipun J. Patel, Esquire
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7301
Telephone No. (215) 851-8100
Facsimile No.  (215) 851-1420
hreichner@reedsmith.com
npatel@reedsmith.com

*Attorneys for Defendant*
*Wells Fargo Bank, N.A.*

Dated: October 30, 2009

## <u>TABLE OF CONTENTS</u>

Table of Authorities ........................................................................................................ iv

I.      <u>INTRODUCTION</u> ................................................................................................1

II.     <u>PROCEDURAL HISTORY</u>.................................................................................2

III.    <u>FACTS</u> ...................................................................................................................3

       A.    The Loan Transaction ...............................................................................3

       B.    Plaintiffs' Failure To Pay Their Property Taxes And Failure To Respond
            To Well Fargo's Letters To Them Concerning The Taxes.....................4

       C.    The Re-Establishment Of The Tax Escrow .............................................5

       D.    Plaintiffs At First Falsely Claimed That They Had Paid The Taxes .......6

       E.    Plaintiffs Thereafter Fell Behind On The Loan Payments.......................7

       F.    The Default And Failure To Satisfy The Pre-Conditions For A Potential
            Loan Modification .....................................................................................7

       G.    Even After The Loan Went Into Foreclosure, Plaintiffs Continued To
            Claim (Falsely) That They Had Paid The Property Taxes.......................9

       H.    Mr. Zebrowski Ultimately Reinstated The Loan ...................................10

IV.     <u>ARGUMENT</u> .......................................................................................................11

       A.    Summary Judgment Standard .................................................................11

       B.    Plaintiffs' FCRA Claim Fails.................................................................12

            1.    Plaintiffs Cannot Make Out A Claim Against Wells Fargo For
                  "Unlawfully Accessing Plaintiffs' Credit Information" ...........................12

            2.    There Is No Private Right Of Action Under The FCRA For Falsely
                  Reporting Credit Information ...................................................................13

            3.    The Applicable Statutory Obligations Of A Furnisher, Such As
                  Wells Fargo, Are Triggered Only After A Consumer Disputes
                  Information On A Credit Report With A Credit Reporting Agency;
                  Mr. Zebrowski Admits He Never Did So ...................................................13

       C.    The Fraud Claim Fails ............................................................................14

            1.    The Fraud Claim Is Barred By The Economic Loss Doctrine..................15

2.     There Is No Evidence Of An Underlying Fraud Claim ..............................16

     a.     There Was No Actionable Misrepresentation.................................16

     b.     Even Assuming A Misrepresentation Was Made, There Is No Evidence Of Scienter, Reasonable Reliance, or Damages.................................................................................17

D.     There Was No Breach of Contract.........................................................................18

     1.     Mr. Zebrowski Failed To Perform His Obligations Under The Mortgage .........................................................................................18

     2.     Wells Fargo Did Not Breach The Contract...................................................19

     a.     Wells Fargo Had The Right To Reestablish The Escrow Account ...................................................................................20

     b.     Wells Fargo Had The Right To Accept Or Refuse Incomplete Payments ...................................................................21

     c.     There Was No Agreement To Postpone Foreclosure ....................23

     3.     There Is No Evidence Of Damages, And Any Claim To Recover Money Paid To Wells Fargo Is Barred By The Voluntary Payment Doctrine..........................................................................................24

E.     There Is No Claim For Negligence .......................................................................24

     1.     The Negligence Claim Is Barred By The Economic Loss Doctrine..........25

     2.     Wells Fargo Owed No Duty To Plaintiffs .................................................25

F.     Wells Fargo Acted In Good Faith .........................................................................26

G.     The NJCFA Claim Fails.........................................................................................27

     1.     The NJCFA Claim Is Barred By The Economic Loss Doctrine...............27

     2.     The NJCFA Has No Application To Improper Servicing Claims ............27

     3.     Even Assuming The NJCFA Applies, There Is No Claim .......................28

H.     There Is No RESPA Claim ....................................................................................28

     1.     There Is No Private Right Of Action For Violations of § 10....................29

     2.     Wells Fargo Properly Reestablished The Escrow Account ......................29

       3.     The Escrow Account Statements Were Truthful And Accurate ................31

           a.     Projected Tax Liabilities .................................................................32

           b.     Escrow Account Shortage ..............................................................32

V.    <u>CONCLUSION</u>............................................................................................33

# TABLE OF AUTHORITIES

## CASES

Alexander v. CIGNA Corp., 991 F. Supp. 427 (D.N.J. 1998)..............................................17, 18

Allison v. Liberty Sav., 695 F.2d 1086 (7th Cir. 1982)...................................................29

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)......................................................12

Banco Popular North America v. Gandi, 184 N.J. 161, 876 A.2d 253 (2005) .............................16

Belfer v. Merling, 730 A.2d 434 (N.J. Super. App. Div. 1999) ...................................................24

Bosland v. Warnock Dodge, Inc., 964 A.2d 741 (N.J. 2009) ...........................................28

Carmen v. Metrocities Mortg. Corp., 2009 WL 1416038 (D.N.J. May 18, 2009) ......................29

Carrigan v. State, 957 F. Supp. 1376 (D. Del. 1997)...................................................11

Celotex Co. v. Catrett, 477 U.S. 317 (1986), cert. denied, 484 U.S. 1066 (1988) .......................11

Clayton v. Raleigh Fed. Sav. Bank, 107 F.3d 865 (4th Cir. 1997)..................................................29

Country Floors, Inc. v. P'ship Composed of Gepner & Ford,
930 F.2d 1056 (3d Cir. 1991).......................................................................11

Dimedio v. HSBC Bank, 2009 WL 1796072 (D.N.J. June 22, 2009) ...................................13, 14

Donleavy v. Casey, 2006 WL 3770883 (N.J. Super. App. Div. Dec. 26, 2006) ..........................25

Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604 (3d Cir. 1995) ..........................15

Elliot & Frantz, Inc. v. Ingersoll-Rand Co., 457 F.3d 312 (3d Cir. 2006)...................................26

Fields v. Thompson Printing Co., Inc., 363 F.3d 259 (3d Cir. 2004) ............................................26

Flammia v. Maller, 66 N.J. Super. 440 (App. Div. 1961) .............................................24

George v. Meinersmann, 197 A. 1 (N.J. 1937)...................................................................23

Hanger v. U.S., 285 U.S. 427 (1932)....................................................................30

Hardy v. Regions Mortg., Inc., 449 F.3d 1357 (11th Cir. 2006) ..................................................29

Herrmann v. Meridian Mortg. Corp., 901 F. Supp. 915 (E.D. Pa. 1995) ....................................29

Hoffman v. Asseenontv.Com, Inc., 962 A.2d 532 (N.J. Super. App. Div. 2009) ........................28

Houghton v. New Jersey Manufacturers Ins. Co., 795 F.2d 1144 (3d Cir. 1986) ........................12

In re McFarlin, 2007 WL 865739 (Bankr. S.D. Tex. Mar. 15, 2007)...........................................20

Kernan v. One Washington Park Urban Renewal Assoc., 154 N.J. 437 (1998)...........................25

Krajewski v. Am. Honda Fin. Corp., 557 F. Supp. 2d 596 (E.D. Pa. 2008)................................13

Lo Bosco v. Kure Eng'g Ltd., 891 F. Supp. 1020 (D.N.J. 1995) ...................................................15

Longo v. First Nat. Mortg. Sources, 2009 WL 313334 (D.N.J. Feb. 6, 2009) .......................27, 28

Lopez v. Correctional Medical Services, 2009 WL 1883915 (D.N.J. June 30, 2009) ................16

Lorenzo v. Palisades Collection, LLC, 2006 WL 891170 (D.N.J. Apr. 5, 2006)........................14

Martinez v. Granite State Mgmt. and Res., 2008 WL 5046792 (D.N.J. Nov. 20, 2008) ............14

Nat'l Util. Serv., Inc. v. Chesapeake Com., 45 F. Supp. 2d 438 (D.N.J. 1999) ...........................18

Ross v. Celtron Intern., Inc., 494 F. Supp. 2d 288 (D.N.J. 2007)..........................................15, 25

Saltiel v. GSI Consultants, Inc., 788 A.2d 268 (N.J. 2002) .........................................................25

Spangle v. Valley Forge Sewer Auth., 839 F.2d 171 (3d Cir. 1988)............................................11

State of La. v. Litton Mortg. Co., 50 F.3d 1298 (5th Cir. 1995) ..................................................29

Traverso v. Home Depot U.S.A., Inc., No. 07-1324, Doc. No. 11 (D.N.J. Oct. 23, 2007) ..........27

United Jersey Bank v. Kensey, 306 N.J. Super. 540 (App. Div. 1997).........................................25

Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.,
275 F. Supp. 2d 543 (D.N.J. 2003) ..............................................................................................18

Vort v. Hollander, 607 A.2d 1339 (N.J. Super. App. Div. 1992) ..................................................27

Vukovich v. Haifa, Inc., 2007 WL 655597 (D.N.J. Feb. 28, 2007)........................................15, 27

Weidman v. Federal Home Loan Mortg. Corp., 338 F. Supp. 2d 571 (E.D. Pa. 2004)................12

Wilson v. Amerada Hess Corp., 168 N.J. 236 (2001) ..................................................................26

World Finer Foods, Inc. v. Archway Cookies, LLC,
2007 WL 3349450 (D.N.J. Nov. 7, 2007) .................................................................26

## STATUTES

12 U.S.C. § 2609 ................................................................................................31, 33

15 U.S.C. § 1681 ................................................................................................12, 13

N.J.S. § 25:1-5 ..................................................................................................23, 27

## REGULATIONS

16 C.F.R. § 604(3) ...................................................................................................11

RESPA Reg. X, 24 C.F.R. § 3500 et seq. ...........................................................30-34

I.      **INTRODUCTION**

The Court should enter summary judgment in favor of Defendant Wells Fargo Bank, N.A. ("Wells Fargo") on the seven (7) counts remaining in the Amended Complaint of Plaintiffs James Zebrowski and Melissa Zebrowski ("Plaintiffs") because Plaintiffs cannot make a showing sufficient to establish the existence of the elements essential to their claims, and on which they will bear the burden of proof at trial.

Plaintiffs claim that Wells Fargo violated numerous laws in servicing the mortgage on their residence.  However, it is undisputed that, as of March of 2006, Plaintiffs had failed to pay the real estate taxes on their home and that, as a result, Wells Fargo established a tax escrow account pursuant to the express terms of the mortgage.  The establishment of the escrow necessarily increased the required monthly loan payment.  The mortgage loan then went into default.  Although the parties thereafter discussed the possibility of a work-out, the pre-conditions for a loan modification were not satisfied and the loan remained in default.  An uncontested foreclosure action followed.  Before a sale occurred, however, Plaintiffs elected to make a payment to Wells Fargo to reinstate the loan.

Thus, the undisputed material facts in this case show that Wells Fargo acted properly in dealing with Plaintiffs throughout the servicing of the loan – whether by creating the escrow account in the first place, in its willingness to discuss the possibility of a workout following the default, or in its prosecution of the foreclosure proceeding.  As such, each of the remaining seven (7) servicing-based claims contained in the Amended Complaint fail as a matter of law, and summary judgment should be entered in favor of Wells Fargo.

## II.    PROCEDURAL HISTORY

On October 31, 2007, Plaintiffs filed a fourteen (14) count Complaint against Wells Fargo.  See Complaint, Exhibit 1 hereto.  On February 13, 2009, Plaintiffs filed an Amended Complaint dropping half of the claims they had originally brought and instead asserted the following eleven (11) claims:

    (1)    Fair Credit Reporting Act;

    (2)    Fraud;

    (3)    Breach of Contract/Warranty;

    (4)    Negligence;

    (5)    Breach of Covenant of Good Faith and Fair Dealing;

    (6)    Abuse of Process;

    (7)    Violation of Civil Rights;

    (8)    Use of Process;

    (9)    Frivolous Action;

    (10)    New Jersey Consumer Fraud Act; and

    (11)    Real Estate Settlement Procedures Act.

See Amended Complaint, Exhibit 2 hereto.

Wells Fargo filed an Answer and, on April 3, 2009, filed a Motion for Judgment on the Pleadings seeking dismissal of Plaintiffs' claims for Abuse of Process (Count VI), Violation of Civil Rights (Count VII), Use of Process (Count VIII), and Frivolous Action (Count IX).  See Doc. No. 20.  Plaintiffs conceded withdrawal of their Frivolous Action claim (Count IX), but otherwise opposed the Motion through their Response filed on April 20, 2009.  See Doc. No. 22. The Court granted Wells Fargo's Motion in an Opinion and Order entered September 17, 2009. See Doc. No. 34, 35.

The discovery deadline was extended a number of times during the course of the litigation and, as extended, the deadline has passed and discovery is now closed.  During the

course of discovery Wells Fargo served two sets of Requests for Admissions upon Plaintiffs. See Defendant's First Request for Admissions and Second Request For Admissions, Exhibits 3 and 4 hereto.  There were a grand total of thirteen (13) requests when the two sets are added together.  Each time Plaintiffs sought and were granted an extension of time to respond (see Exhibits 5 and 6 hereto).  Each time no response was served on or before the extended due date and no additional request for more time was made.  Indeed, no responses have ever been served and Plaintiffs never filed a motion to withdraw their deemed admissions.[1]

As noted above, discovery has now closed and Wells Fargo now moves for summary judgment based on the aforesaid admissions, the deposition of Plaintiff James Zebrowski ("Mr. Zebrowski") (Exhibit 7 hereto), and the Affidavit of Tamara Golden, an employee of Wells Fargo (Exhibit 8 hereto).

## III.   FACTS

### A.   The Loan Transaction

Mr. Zebrowski entered into a mortgage loan with Wells Fargo on December 13, 2002. See Amended Complaint at ¶ 8; Note, attached hereto as Exhibit 9, and verified by Mr. Zebrowski at his deposition (hereinafter "JZ dep."), Ex. 7, at 45:6-24, 46:1-7; Mortgage, attached hereto as Exhibit 10, and verified at JZ dep. at 42-44.[2]  Under the terms of the loan, Mr. Zebrowski was required to make monthly payments of principal and interest totaling $1,307.07

---

[1]   "A matter is admitted, unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  See Fed. R. Civ. P. 36(a)(3).

[2]   Melissa Zebrowski is not a named borrower under the Note or Mortgage.  See Note, Ex. 9; Mortgage, Ex. 10; JZ Dep. at 44:13-24, 45:1-5.  Accordingly, she does not have standing to assert any claims in this action.  Nevertheless, any potential claim of Melissa Zebrowski likewise fails for the reasons explained herein.

until February 2010.  See Truth in Lending Act Disclosure, attached hereto as Exhibit 11, and verified at JZ dep. at 49:7-24, 50:1-7; Escrow Account Disclosure, attached hereto as Exhibit 12 and verified at JZ dep. at 50:17-24; 51:1-20; Note, Ex. 9; Mortgage, Ex. 10.

In addition to the monthly payments of principal and interest, Mr. Zebrowski was initially responsible for making monthly payments to fund an escrow account which was created at closing to pay for property taxes and insurance.  See Mortgage, Ex. 10, at p. 4; Escrow Account Disclosure, Ex. 12; JZ dep. at 51:14-20.  Subsequently, Mr. Zebrowski requested a deletion of the escrow account and, on or about April 5, 2005, Wells Fargo deleted the escrow without waiving its right under Section 3 of the Mortgage to require an escrow in the future.  See JZ dep. at 56:19-24; 57:1-2; Affidavit of Tamara Golden (hereinafter, "Golden Aff."), Ex. 8, at ¶ 8.[3]  Mr. Zebrowski understood that he would be solely responsible for making the quarterly tax payments upon deletion of the escrow account.  JZ dep. at 53:3-15.

**B.    Plaintiffs' Failure To Pay Their Property Taxes And Failure To Respond To Well Fargo's Letters To Them Concerning The Taxes**

Plaintiffs subsequently failed to pay their property taxes due October 2005 and January 2006.  JZ dep. at 60:12-19; Golden Aff. at ¶ 10; Wells Fargo's Second Request for Admissions (hereinafter, "2nd Req. Admiss.") directed to Plaintiffs, Ex. 4, Nos. 7-8.

---

[3]    At the loan closing, real estate taxes due January 3, 2003 should have been paid, but were not, and as a result, subsequent payments until the beginning of 2005 were a quarter behind.  See Am. Compl. ¶ 11; JZ dep at 53:1-23.  Plaintiffs brought their tax payments current in the beginning of 2005.  See Am. Compl. ¶ 11-13; JZ dep. at 53:17-19.  In or around April 2005, Wells Fargo immediately reimbursed Plaintiffs for all of the penalties and late fees incurred as a result of the taxes not being paid.  See Wells Fargo's First Request for Admissions (hereinafter, "1st Req. Admiss.") directed to Plaintiffs, Ex. 3, No. 4; JZ dep. at 53:12-23; Letter from Mr. Zebrowski to Wells Fargo produced by Plaintiffs, dated August 22, 2006 at p. 3 ("Wells Fargo apologized for the inconvenience and immediately reimbursed all related expenses"), attached hereto as Exhibit 13, and verified at JZ dep. at 110:20-24, 111, 112:1-6.

On or about January 10, 2006, Wells Fargo was notified by the relevant taxing authority of the missed payments, and sent a letter to Plaintiffs notifying them of the property tax arrears. Golden Aff. at ¶ 11, Ex. B; 1st Req. Admiss. No. 1.  The letter asked Plaintiffs to provide Wells Fargo with proof of payment of the delinquent taxes.  Golden Aff. at Ex. B.  The letter further noted:

> If you have not made this tax payment, we can assist you by paying the full amount of the past due taxes, including all applicable interest/penalty due.  <u>An escrow account will be established on your behalf for the collection of the advance, as well as all future tax bills.</u>  Your monthly mortgage payment will increase to repay the advance and to collect for a monthly escrow deposit.

<u>Id.</u> (emphasis added).[4]

A second letter notifying Plaintiffs of the property tax arrears, requesting proof of payment, and noting that an escrow account would be created was sent on February 16, 2006. Golden Aff. at ¶ 12, Ex. C; 1st Req. Admiss. No. 2.  Plaintiffs failed to respond to both letters, and never sent proof of payment of the property tax arrears.  Golden Aff. at ¶ 13; 2nd Req. Admiss. No. 1-2, 4-5, 7-8.

### C.    The Re-Establishment Of The Tax Escrow

As a result of Plaintiffs' failure to pay their property taxes or even respond to Wells Fargo's correspondence, on March 13, 2006, Wells Fargo paid taxes due October 2005 ($1,868.00), January 2006 ($1,728.90), and April 2006 ($1,728.89), as well as interest and penalties of $129.47.  Golden Aff. at ¶ 15.  That same day, Wells Fargo notified Plaintiffs in a

---

[4]    At his deposition, Mr. Zebrowski stated that mail service at his home was uninterrupted during 2006.  JZ dep. at 19:13-24.

third letter that an escrow account had been reestablished to pay for delinquent and future taxes.

<u>See</u> Golden Aff. at ¶ 14, Ex. D; 1st Req. Admiss. No. 3.   The letter specifically noted:

> An escrow account has been established on your behalf for the collection of the amount advanced to bring your taxes current, as well as to pay all future tax bills for the life of this loan.  <u>Your monthly mortgage payment will increase to repay the advance and to establish the escrow account</u>.

Mar. 13, 2006 letter attached to Golden Aff. as Ex. D (emphasis added).

Wells Fargo also sent Plaintiffs an Escrow Disclosure Statement and Notice of New Mortgage Payment on March 15, 2006.  <u>See</u> Escrow Disclosure Statement and Notice of New Mortgage Payment produced by Plaintiffs dated Mar. 15, 2006, attached hereto as Ex. 14, and verified at JZ dep. at 82-83, 84:1-14; Golden Aff. at ¶ 17, Ex. D.  The Disclosure Statement notes that mortgage payments would increase to $2,472.66 beginning May 1, 2006, to cover escrow items and shortages.  <u>Id.</u>

### D.      <u>Plaintiffs At First Falsely Claimed That They Had Paid The Taxes</u>

Upon receipt of the new payment information, Mr. Zebrowski placed a telephone call to Wells Fargo on March 17, 2006, and claimed that the escrow account had been erroneously created because he paid the property taxes due October 2005 and January 2006, and that he had cancelled checks evidencing payment.  Golden Aff. at ¶ 18.  <u>See</u> <u>also</u> Compl., Ex. 1 hereto, at ¶ 15 ("Defendant's payments in March 2006 included tax payments that Plaintiffs had previously made.").  Plaintiffs have since admitted that these contentions were false because, in fact,

Plaintiffs did not pay the taxes due October 2005, January 2006, or April 2006. JZ dep. at 60:12-19; Golden Aff. at ¶¶ 10, 15-16; 2nd Req. Admiss. Nos. 7-9.[5]

### E. Plaintiffs Thereafter Fell Behind On The Loan Payments

During the March 17th phone call, Mr. Zebrowski advised Wells Fargo that he would be late in making his payment for March 2006, promising to pay it in early April 2006. Golden Aff. at ¶ 20. Principal and interest payments due March and April 2006 were received and applied by Wells Fargo on April 11, 2006. Id. at ¶ 22. Wells Fargo waived the applicable late fees in light of Mr. Zebrowski's representation that he was experiencing hardship in making payments due to the illness of his son. Id.

On May 16, 2006, Mr. Zebrowski advised Wells Fargo that he would be late in making his payment for May, but offered to pay $1,400. Id. at ¶ 23. Wells Fargo accepted a partial payment of $1,400 on May 16th, placing the funds in a suspense account as permitted by the loan documents. Id. at ¶ 24.

### F. The Default And Failure To Satisfy The Pre-Conditions For A Potential Loan Modification

Mr. Zebrowski failed to make his loan payment due June 1, 2006. Golden Aff. at ¶ 26. As a result, on June 12, 2006, Wells Fargo sent an acceleration letter to Plaintiffs' residence indicating that the loan was in default, and that Plaintiffs needed to pay $6,017.98 by July 12, 2006, to cure the default and bring the loan current. See Acceleration letter attached hereto as Exhibit 15 and verified at JZ dep. at 93:17-24, 94-95, 96:1-3; Golden Aff. ¶ 27, Ex. F.

---

[5]   Mr. Zebrowski repeated this falsehood on a number of subsequent calls, including calls on April 10, 2006, May 16, 2006, and May 24, 2006, and thereafter. Golden Aff. at ¶¶ 21, 23, 25.

Two days before the deadline, on July 10, 2006, Wells Fargo discussed potential workout options with Mr. Zebrowski in a telephone call.  Golden Aff. at ¶ 29.[6]  During this call, Mr. Zebrowski offered to make a down payment of $5,100.00, and was prequalified for a loan modification.  Id. at ¶ 30.  Mr. Zebrowski was specifically told that the terms of the modification were not final, and dependent upon a review of the modification paperwork once it was returned.  Id.  That same day, Wells Fargo sent Mr. Zebrowski a letter indicating that the loan was being considered for a modification, and requested a financial statement and a copy of Mr. Zebrowski's most recent paycheck stub.  Id. at ¶ 31, Ex. G.

The letter expressly stated that Mr. Zebrowski had to provide the required information no later than July 20, 2006:

> Please note that until such time as you are approved for a modification, normal default servicing will continue which includes any foreclosure action that may be in process.  Any fees associated with this action will continue to accrue until your loan modification is approved and will be your responsibility to pay.  **You must send the documents requested above to be received in our office no later than July 20, 2006.**

Letter sent to Plaintiffs' residence on July 10, 2006, attached to Golden Aff. as Ex. G (emphasis added).

A second letter requesting additional information for consideration of a possible loan modification was sent to Plaintiffs' residence on July 11, 2006.  Golden Aff. at ¶ 33, Ex. H.  This letter also noted that consideration of a modification would be cancelled if the requested information was not received within ten (10) days.  Id. at ¶ 34.  Wells Fargo also left two

---

[6]     During this call, Mr. Zebrowski again falsely represented that he had paid his property taxes, and claimed that he was seeking a refund from his taxing authority.  Golden Aff. at ¶ 29.

messages on Plaintiffs' answering machine on July 12, 2006, and July 15, 2006, but these calls were not returned.  Golden Aff. at ¶ 36.

Mr. Zebrowski never returned the modification paperwork.  JZ dep. at 97-104, 105:1-10. Golden Aff. at ¶ 35.  As a result, on August 2, 2009, workout options were cancelled and the loan was referred for foreclosure.  Am. Compl. ¶¶ 40-41; Golden Aff. at ¶ 37.  A letter informing Mr. Zebrowski that the request for loan modification had been cancelled was sent that same day. Id. at ¶ 37, Ex. I.

After the loan went into foreclosure, Wells Fargo continued to pay Plaintiffs' property taxes, making a payment of $1,895.49 on August 4, 2006, for taxes due third quarter 2006.  See Golden Aff. at ¶ 38.  This payment brought the escrow advance amount alone for Mr. Zebrowski's mortgage loan to $7,350.75.  Id.

### G.   Even After The Loan Went Into Foreclosure, Plaintiffs Continued To Claim (Falsely) That They Had Paid The Property Taxes

Even after the loan went into foreclosure, Mr. Zebrowski continued to assert that the escrow account had been improperly created.  See Golden Aff. at ¶¶ 39, 43-45, 50.  On August 10, 2006, Mr. Zebrowski once again falsely advised Wells Fargo that he had paid his taxes for October 2005 and January 2006.  Id. at ¶ 39; 2nd Req. Admiss. No. 1-2, 4-5, 7-8.  That same day, however, Wells Fargo was advised by the taxing authority that no duplicate payments had been made.  Golden Aff. at ¶ 41.  Mr. Zebrowski continued to claim that he had paid his taxes in calls with Wells Fargo on August 11th, 14th, and 29th.  Id. at ¶¶ 43-45.[7]

---

[7]   On September 8, 2006, Wells Fargo sent a letter to Plaintiffs' residence informing them that their taxing authority had confirmed that no duplicate property tax payments had been made.  See Golden Aff. at ¶ 37, and letter attached thereto as Ex. L, acknowledged by Mr. Zebrowski at his deposition, JZ dep. at 116:19-24, 117-20; 121:1.

At the same time, Mr. Zebrowski was unable to reinstate the loan. On August 10, 2006, Wells Fargo once again discussed workout options and sent a letter to Plaintiffs' residence requesting financial information from Mr. Zebrowski. Golden Aff. at ¶ 40, Ex. J. Another letter requesting information was sent on August 11, 2006. Golden Aff. at ¶ 42, Ex. K. On August 14, 2006, Mr. Zebrowski was encouraged to send back the requested information, but never did so. Golden Aff. at ¶ 44.[8] After the loan went into foreclosure in August 2006, Wells Fargo refused to accept any payments that were not sufficient to reinstate the loan. Id. at ¶ 46.

**H.   Mr. Zebrowski Ultimately Reinstated The Loan**

On October 19, 2006, Wells Fargo received a letter from Mr. Zebrowski authorizing Mrs. Zebrowski to discuss the mortgage loan with Wells Fargo. JZ dep. at 134:15-24, 135-36; Golden Aff. at ¶ 49, Ex. M. That same day, Plaintiffs advised Wells Fargo that they would search for cancelled checks evidencing their purported property tax payments. Golden Aff. at ¶ 50. However, no such checks were ever sent and, it turns out, none ever existed. Id.; 2nd Req. Admiss. No. 1-9.

It was not until November 7, 2006, that Plaintiffs finally admitted in a telephone call that there were no duplicate tax payments. Golden Aff. at ¶ 19; 2nd Req. Admiss. No. 1-9. On or about November 13, 2006, Mr. Zebrowski reinstated the loan by paying Wells Fargo the amount required to bring the loan current. JZ dep. at 123:20-24; 124:1-6; Golden Aff. at ¶ 52.

---

[8]   Wells Fargo also sent a letter to Plaintiffs' residence on August 14, 2006, providing them with instructions and contact information for the credit reporting agencies to initiate a dispute regarding Wells Fargo's reporting of the foreclosure action. See Letter from Wells Fargo dated August 14, 2006 and produced by Plaintiffs, attached hereto as Ex. 16.

IV.    **ARGUMENT**

Wells Fargo is entitled to summary judgment on each of the following remaining counts of Plaintiffs' Amended Complaint: (1) Fair Credit Reporting Act, (2) Fraud, (3) Breach of Contract/Warranty, (4) Breach of Covenant of Good Faith and Fair Dealing, (5) Negligence, (6) New Jersey Consumer Fraud Act, and (7) Real Estate Settlement Procedures Act.

A.    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Co. v. Catrett, 477 U.S. 317, 322 (1986), cert. denied, 484 U.S. 1066 (1988); Spangle v. Valley Forge Sewer Auth., 839 F.2d 171, 173 (3d Cir. 1988). "The moving party is not required to negate the non-movant's claim, but is only required to point out the lack of evidence supporting the non-movant's claim." Carrigan v. State, 957 F. Supp. 1376, 1381 (D. Del. 1997) (citing Country Floors, Inc. v. P'ship Composed of Gepner & Ford, 930 F.2d 1056, 1061 (3d Cir. 1991)). When the record will not support a rational finding of one or more essential elements of the non-moving party's case, summary judgment must be entered for the moving party. Celotex, 477 U.S. at 322.

Once a party puts forth a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by Affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A fact issue is considered "genuine" only if there is sufficient evidence on which a reasonable jury could base

a finding in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

(1986).

### B.   Plaintiffs' FCRA Claim Fails

Count I of Plaintiffs' Amended Complaint purports to assert a claim against Wells Fargo

under the Fair Credit Reporting Act ("FCRA") for "unlawfully accessing Plaintiffs' credit

information and/or furnishing inaccurate information to credit reporting agencies."  Am. Compl.

¶ 61.  This claim fails for multiple reasons.

### 1.   Plaintiffs Cannot Make Out A Claim Against Wells Fargo For "Unlawfully Accessing Plaintiffs' Credit Information"

As a preliminary matter, there is no evidence of record to support Plaintiffs' claim that

Wells Fargo "accessed" Plaintiffs' credit information at all, let alone in an improper or

"unlawful" manner.

More to the point, it would make no difference even if there were evidence that Wells

Fargo had accessed Plaintiffs' credit information.  This is so because there is no cause of action

under the FCRA against a creditor – like Wells Fargo – who accesses a consumer report to

analyze the account information of one of its borrowers: section 1681b(a)(3)(F) of the FCRA

states that a consumer report may be provided to a person who "has a legitimate business need

for the information – (i) in connection with a business transaction that is initiated by the

consumer, or (ii) to review an account to determine whether the consumer continues to meet the

terms of the account."  15 U.S.C. § 1681b(a)(F)(i)-(ii); 16 C.F.R. § 604(3)(A) (same).  See also

Houghton v. New Jersey Manufacturers Ins. Co., 795 F.2d 1144 (3d Cir. 1986) (for the

"legitimate business need" permissible purpose to exist, a "consumer relationship" must exist

between the person requesting the report and the subject of the report); Weidman v. Federal

Home Loan Mortg. Corp., 338 F. Supp.2d 571, 577 (E.D. Pa. 2004) (granting summary

judgment in favor of lenders on plaintiff's FCRA claim premised on impermissible access where lenders reviewed consumer report in connection with extension of credit).

Therefore, to the extent the FCRA claim is based on an allegation of unlawful access, it is without merit and Wells Fargo is entitled to summary judgment on any such claim.

### 2. There Is No Private Right Of Action Under The FCRA For Falsely Reporting Credit Information

Further, it is well established that the FCRA does not create a cause of action against a creditor – like Wells Fargo – who furnishes information to a credit reporting agency. See Dimedio v. HSBC Bank, 2009 WL 1796072, *2 (D.N.J. June 22, 2009) ("there is no a private right of action through [15 U.S.C. § 1681n] for violations of [15 U.S.C. § 1681s-2(a)]"); Krajewski v. Am. Honda Fin. Corp., 557 F. Supp. 2d 596, 608 (E.D. Pa. 2008) ("[T]here is no private right of action based on a furnisher's failure to comply with § 1681s-2(a); enforcement of these provisions is left to federal agencies."). Accordingly, the Court should enter summary judgment on the FCRA claim to the extent it rests on an assertion that Wells Fargo inaccurately reported credit information.[9]

### 3. The Applicable Statutory Obligations Of A Furnisher, Such As Wells Fargo, Are Triggered Only After A Consumer Disputes Information On A Credit Report With A Credit Reporting Agency; Mr. Zebrowski Admits He Never Did So

Finally, the applicable statutory obligations of a furnisher of credit information – like Wells Fargo – are triggered only after a consumer disputes information on a credit report with a credit reporting agency. See 15 U.S.C. § 1681s-2(b); Dimedio, 2009 WL 1796072, at *3;

___
[9] As it happens, there is no evidence of record that Wells Fargo reported any credit information or that any such report was inaccurate. Thus, even were there a private right of action against a creditor under FCRA for such a claim, Plaintiffs lack any evidence of the prerequisites for such a claim.

<u>Lorenzo v. Palisades Collection, LLC</u>, 2006 WL 891170, at *2 (D.N.J. Apr. 5, 2006) ("With respect to subsection (b), ... a private cause of action exists, but only where the furnisher of information receives notice of a dispute directly from a consumer reporting agency, as opposed to from the consumer.").  Thus, this Court has consistently held that a plaintiff asserting a claim for inaccurate reporting show that "(1) [he] sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." <u>Dimedio</u>, 2009 WL 1796072, at *3 (quoting <u>Martinez v. Granite State Mgmt. and Res.</u>, 2008 WL 5046792, *3 (D.N.J. Nov. 20, 2008)).

Mr. Zebrowski admitted at his deposition that he has never contacted a consumer reporting agency to dispute Wells Fargo's reporting of the account:

> Q.  Did you ever talk to a credit agency to dispute information that Wells Fargo had reported on your credit report?
> A.  Not me personally, no, I don't think that I did.

JZ dep., Ex. 7, at 140:1-5.[10]  Therefore, the FCRA claim fails to the extent it rests on Wells Fargo's status as a furnisher of credit information.

*   *   *

Against this backdrop, the Court should enter summary judgment in favor of Wells Fargo on Count One of the Amended Complaint (FCRA).

### C.      The Fraud Claim Fails

Count II of the Amended Complaint purports to assert a claim of fraud against Wells Fargo.  Plaintiffs' theory of fraud is unclear: the Amended Complaint generally alleges that "the

---

[10]      There is no evidence of record that Wells Fargo was notified by a credit reporting agency of any dispute or that, if so notified, it responded inappropriately.

aforesaid misrepresentations and/or omissions were made in an attempt to procure pecuniary gain from a security interest in Plaintiffs' home, monetary consideration from the Plaintiffs, and/or otherwise from the proceeds of the loan and/or foreclosure" and that "Plaintiffs reasonably relied upon said misrepresentations and/or omissions to their detriment." See Am. Compl. ¶ 64. However interpreted, this claim fails for multiple reasons.

### 1.    The Fraud Claim Is Barred By The Economic Loss Doctrine

"The economic loss doctrine prevents a plaintiff from recovering in tort for economic losses flowing from a contract." Ross v. Celtron Intern., Inc., 494 F. Supp.2d 288, 298 (D.N.J. 2007) (citing Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)); Vukovich v. Haifa, Inc., 2007 WL 655597, *7-8 (D.N.J. Feb. 28, 2007) (same).

In applying the economic loss doctrine, New Jersey courts have continually affirmed "'the conceptual distinction between a misrepresentation of a statement of intent at the time of contracting, which then induces detrimental reliance on the part of the promisee, and the subsequent failure of the promisor to do what he has promised.'" Ross, 494 F. Supp.2d at 298 (quoting Lo Bosco v. Kure Eng'g Ltd., 891 F. Supp. 1020, 1032 (D.N.J. 1995)). Thus, a fraud claim may only proceed with a breach of contract claim where the fraud arises out of fraud in the inducement or pre-contractual misrepresentations. Ross, 494 F. Supp.2d at 298; Vukovich, 2007 WL 655597, at *7-8. Accordingly, the "'mere subsequent failure of the promisor to do what he has promised is not recoverable in tort.'" Ross, 494 F. Supp.2d at 298 (quoting Vukovich, 2007 WL 655597, at *7).

Here, Plaintiffs' theory of fraud has nothing to do with the origination of the loan and everything to do with Wells Fargo's alleged acts and omissions during the course of

performance, i.e., servicing, of the mortgage loan.  Therefore, the fraud claim is barred by the economic loss doctrine.

**2.      There Is No Evidence Of An Underlying Fraud Claim**

Plaintiffs' fraud claim also fails because there is no evidence of record to support it. Under New Jersey law, Plaintiffs have the burden of proving the following elements to sustain a claim of fraud: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Banco Popular North America v. Gandi, 184 N.J. 161, 173, 876 A.2d 253, 260 (2005).  Plaintiffs must prove each of these elements "by clear and convincing evidence."  Lopez v. Correctional Medical Services, 2009 WL 1883915, *16 (D.N.J. June 30, 2009) (emphasis added).  Plaintiffs cannot meet their burden of proving any of these elements.

*a.      There Was No Actionable Misrepresentation*

The undisputed facts show that Wells Fargo did not make any misrepresentations to Plaintiffs in the course of servicing Mr. Zebrowski's loan.

Wells Fargo acted according to the terms of the Mortgage by reinstating the escrow account because of Plaintiffs' failure to pay their property taxes.  See Mortgage, Ex. 10, § 3; Golden Aff. at ¶¶ 9-10; JZ dep. at 60:12-19; 1st Req. Admiss.; 2nd Req. Admiss.  Before and after the escrow was created, Wells Fargo informed Mr. Zebrowski that his monthly payments would increase.  Golden Aff. at ¶¶ 11-14, 17, Ex. B-D; JZ dep. at 82-83, 84:1-14; Escrow Disclosure, Ex. 14 hereto; 1st Req. Admiss.; 2nd Req. Admiss.  Wells Fargo promptly notified Mr. Zebrowski that the loan was in default.  Acceleration Letter, Ex. 15 hereto; JZ dep. at 93:17-24, 94-95, 96:1-3; Golden Aff. at ¶ 27, Ex. F.  After the loan went into default, Wells Fargo

- 16 -

expressly informed Mr. Zebrowski that the loan would remain in default until a loan modification was approved.  Golden Aff. at ¶¶ 30-31, Ex. G, H.  Indeed, two letters sent to Plaintiffs' residence on July 10, 2006, and July 11, 2006 expressly stated that "until such time as you are approved for a modification, normal default servicing will continue which includes any foreclosure action that may be in process."  Golden Aff. at Ex. G, H (emphasis added).

Further, Wells Fargo's supposed oral representations to enter into a loan modification or postpone foreclosure cannot, as a matter of law, be considered "misrepresentations."  It is well-settled New Jersey law that

> Statements as to future or contingent events, to expectations or probabilities, or as to what will or will not be done in the future, do not constitute misrepresentations, even though they may turn out to be wrong.  Indeed, in order to constitute a fact, a statement's content must be susceptible of 'exact knowledge' at the time it is made.

Alexander v. CIGNA Corp.  991 F. Supp. 427, 435 (D.N.J. 1998) (citations omitted).  Thus, in the absence of any evidence that Wells Fargo made a misrepresentation, Plaintiffs' fraud claim must fail.

> **b.    Even Assuming A Misrepresentation Was Made, There Is No Evidence Of Scienter, Reasonable Reliance, or Damages**

Even assuming a misrepresentation was made, there is no evidence of record, let alone clear and convincing evidence, to suggest that any statement by Wells Fargo was made with knowledge of its falsity or that Wells Fargo intended for Plaintiffs to rely on it.  Plaintiffs also cannot prove that any purported actions they took in reliance on the supposed representations of Wells Fargo were reasonable in the face of the two letters sent to Plaintiffs' residence on July 10, 2006, and July 11, 2006.  See Golden Aff. at Ex. G, H.  As this Court has recognized, oral assurances that are "flatly contradictory" to written statements should cause "most people to

pause," and preclude a finding of reasonable reliance.   See <u>Alexander</u>, 991 F. Supp. at 436 (holding that it was "manifestly unreasonable for plaintiffs to assert that they reasonably relied on any alleged statements" which were contradictory to the terms of a written contract).

Finally, Plaintiffs have not set forth any evidence of damages they suffered as a result of the purported "fraud" by Wells Fargo.  At his deposition, Mr. Zebrowski could not even specify the relief that he hoped to obtain from filing this lawsuit, let alone specify his damages:

> Q.  And I just want to know, in your own words, can you tell me what you hope to gain out of this lawsuit?
>
> A.  Not specifically, I can't.

JZ dep. at 148:1-4.  For these additional reasons, Plaintiffs' fraud claim fails and the Court should enter summary judgment in favor of Wells Fargo on Count II of the Amended Complaint.

### D.   **There Was No Breach of Contract**

The breach of contract claim (Count III) fails as well.  In order to maintain a claim for a breach of contract, Plaintiffs must prove the following: (1) the existence of a valid contract; (2) performance of their contractual obligations; (3) Wells Fargo's breach of a contract term; and (4) damages resulting from the breach.   See <u>Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc.</u>, 275 F. Supp.2d 543, 566 (D.N.J. 2003); <u>Nat'l Util. Serv., Inc. v. Chesapeake Com.</u>, 45 F. Supp. 2d 438, 448 (D.N.J. 1999).  Plaintiffs can not sustain their burden of proving parts 2, 3, and 4 of this test.

### 1.   **Mr. Zebrowski Failed To Perform His Obligations Under The Mortgage**

As a threshold matter, Plaintiffs can not prove that Mr. Zebrowski fulfilled his obligations under the Mortgage.  The Mortgage expressly obligated Mr. Zebrowski to make monthly payments for principal, interest, and escrow items:

> Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment and late charges due under the Note.  Borrower shall also pay funds for Escrow Items pursuant to Section 3.

See Mortgage, Ex. 10, at ¶ 1.

Further, Mr. Zebrowski testified at his deposition that he knew his monthly payment beginning May 1, 2006, would increase to $2,472.66:

> Q.  Did you understand that beginning May 1, 2006 your monthly payment was going to increase to $2,472.66?
>
> A.  Which date?
>
> Q.  Did you understand, after you received this document [the Escrow Disclosure Statement and Notice of New Mortgage Payment], that your monthly payment was going to increase to 2,472.66?
>
> A.  Yes.
>
> Q.  Did you make a payment in May of 2006?
>
> A.  I don't recall.

See JZ dep. at 84:4-14.

Despite understanding that his monthly payment for May 2006 was $2,472.66, Mr. Zebrowski failed to make it, resulting in a default.  See Acceleration Letter; Golden Aff. at ¶¶ 26-27.  In fact, Mr. Zebrowski did not make a full payment on the loan until November 2006. Golden Aff. at ¶ 52.  Thus, Mr. Zebrowski's failure to perform his obligations under the Mortgage precludes any breach of contract claim against Wells Fargo.

## 2.   **Wells Fargo Did Not Breach The Contract**

Even assuming Plaintiffs performed their obligations, Wells Fargo did not breach the terms of the Mortgage.  In support of their claim, Plaintiffs have alleged only that "Plaintiffs and Defendants were parties to an express contract(s) and/or contract(s) and/or warranties implied at law, which includes but is not limited to Defendants as third-party beneficiaries, which

Defendants are in breach thereof."  Am. Compl. ¶ 67.  Notwithstanding such general allegations, Plaintiffs' claim of breach appears to rest on three theories: (1) Wells Fargo's creation of the escrow account, (2) Wells Fargo's refusal of partial payments, and (3) Wells Fargo's purported failure to abide by an alleged oral agreement to postpone foreclosure in July 2006.  See Am. Compl. ¶¶ 15-54.  Each of these allegations will be addressed in turn.

> ### a.     Wells Fargo Had The Right To Reestablish The Escrow Account

Plaintiffs' first theory of breach alleges that Wells Fargo's creation of the escrow account in March 2006 was an error that "blocked" Plaintiffs' ability to pay property taxes.  See Am. Compl. ¶¶ 17-19.  However, Wells Fargo had a right to create the escrow account in the event that Plaintiffs failed to pay their taxes under the express terms of the Mortgage:

> In the event of [an escrow waiver], Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as lender may require. . . .  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Mortgage, Ex. 10, at § 3 (emphasis added).  Courts have interpreted such provisions to allow loan servicers to revoke escrow waivers and establish escrow accounts to satisfy the advance payment and provide for future tax bills.  See, e.g., In re McFarlin, 2007 WL 865739, *1 (Bankr. S.D. Tex. Mar. 15, 2007) ("[T]he plain meaning of the [Mortgage] expressly gives ASC the right to revoke the waiver and to pay, and demand repayment of, the amounts paid to escrow items of the delinquent debtor.").

Moreover, at his deposition, Mr. Zebrowski stated that he understood tax payments were his responsibility after the escrow was deleted in April 2005, but failed to make those payments:

> Q.  And Wells Fargo granted that escrow deletion in April of 2005; is that correct?
>
> A.  Correct.
>
> Q.  Mr. Zebrowski, did you understand that after the escrow was deleted that you would be responsible for paying the taxes on the property?
>
> A. Yes.
>
> …
>
> Q.  You didn't make the property tax payment due in October of 2005; is that correct?
>
> A.  Correct.
>
> Q.  You didn't make the tax payment due in January of 2006, either, is that correct?
>
> A.  I didn't, no.

JZ dep. at 56:23-24, 57:1-7, 60:12-19.  See also Golden Aff. at ¶¶ 10-14; 2nd Req. Admiss. No. 7-8.  Further, consistent with the terms of the Mortgage, Wells Fargo notified Plaintiffs in writing that the escrow account would be reestablished if they failed to provide proof of payment.  Golden Aff. at ¶¶ 11-14, Ex. B-C; 1st Req. Admiss. No. 1-2.

Thus, in light of Plaintiffs' undisputed failure to pay their property taxes due October 2005 and January 2006, Wells Fargo did not breach the terms of the Mortgage by reestablishing the escrow account.

### b.  *Wells Fargo Had The Right To Accept Or Refuse Incomplete Payments*

Further, Wells Fargo acted properly and in accordance with the terms of the Mortgage when it applied partial payments and returned incomplete payments.

As discussed above, after Wells Fargo created the escrow account in March 2006, it sent Plaintiffs an Escrow Account Disclosure and Notice of New Mortgage Payment.  See Ex. 14; JZ dep. at 82-84.  On May 1, 2006, Mr. Zebrowski's monthly mortgage payment increased from $1,307.07 to $2,472.66.  See Ex. 14; JZ dep. at 82-84.  Despite the new payment amount, Plaintiffs sent in only $1,400 for the May payment.  Golden Aff. at ¶ 24.  Wells Fargo accepted the partial payments as a courtesy and placed them in a suspense account.  Id.  The Mortgage permits Wells Fargo to accept partial payments without waiving any of its rights:

> Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.

Mortgage, Ex. 10, at ¶ 1.

The next payment Wells Fargo received,[11] on August 16, 2006, was comprised of two checks totaling $7,325.05.  See Golden Aff. at ¶ 47.  However, such amount was insufficient to reinstate the loan and the checks were returned to Plaintiffs on August 18, 2006.  See Id.  In doing so, Wells Fargo acted in accordance with the terms of the Mortgage, which provides that:

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.

Mortgage at ¶ 1.  As such, Wells Fargo did not breach any of the terms of the Mortgage in its application and refusal to accept the mortgage payments.

---

[11]  The Mortgage expressly notes that "[p]ayments are deemed received by the Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15."  Mortgage at ¶ 1.

### c.     There Was No Agreement To Postpone Foreclosure

Plaintiffs' allegations that Wells Fargo breached the mortgage contract by proceeding with foreclosure in August 2006 are also without merit.  Specifically, Plaintiffs allege that, in July 2006, Wells Fargo agreed to postpone foreclosure if it received $7,325.05, but later "failed to honor" this figure.  See Am. Compl. ¶¶ 28 – 49.

The record is clear that Wells Fargo expressly informed Mr. Zebrowski that the loan would remain in default servicing, including foreclosure, until loan modification paperwork was received and approved.  See Golden Aff. at ¶¶ 30-31, Ex. G, H.  For this reason alone, any contract claim premised on this theory is without merit.

Further, any such oral agreement Wells Fargo purportedly made to forebear on exercising its right under the Note and Mortgage to foreclose is barred by the Statute of Frauds.  See N.J.S. § 25:1-5.  Because Mr. Zebrowski's loan was an extension of credit "in an amount greater than $100,000," it unquestionably falls within the Statute of Frauds.  See N.J.S. §§ 25:1-5(f).  The Statute of Frauds provides that such oral forbearance agreements are unenforceable:

> No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized:
>
> …
>
> g. An agreement by a creditor to forbear from exercising remedies pursuant to a contract, promise, undertaking or commitment which is subject to the provisions of subsection f of this section.

Id.  See also George v. Meinersmann, 197 A. 1 (N.J. 1937) (an agreement to postpone foreclosure is within the Statute of Frauds, and hence it is unenforceable unless it is in writing and signed by the "person to be charged therewith").

Therefore, there was no agreement to delay foreclosure, and such an allegation can not form the basis for a breach of contract by Wells Fargo.

> **3.     There Is No Evidence Of Damages, And Any Claim To Recover Money Paid To Wells Fargo Is Barred By The Voluntary Payment Doctrine**

Further, even if Plaintiffs could prove a breach of contract by Wells Fargo (which they cannot), there is no evidence of damages resulting from such breach. To the extent that Plaintiffs seek to recover sums of money paid to Wells Fargo, such a claim is barred by the voluntary payment rule. Under New Jersey law, "[i]t is well settled that money knowingly and voluntarily paid cannot be recovered on the ground there was no liability to pay it in the first instance." Belfer v. Merling, 730 A. 2d 434, 441 (N.J. Super. App. Div. 1999); Flammia v. Maller, 66 N.J. Super. 440, 459 (App. Div. 1961).

Here, Plaintiffs' own allegations dictate application of the voluntary payment rule. Plaintiffs claim that Defendants "used the foreclosure to collect sums that were not" necessary. Am. Compl. ¶ 56. However, despite Plaintiffs' alleged dissatisfaction with Wells Fargo's servicing of the loan in 2006, it is undisputed that Plaintiffs paid the reinstatement quote provided by Wells Fargo in November 2006 and continued to make payments on the loan prior to filing their Complaint. See Am. Compl. ¶ 18; JZ Dep. at 123:21-124:6, 130:18-24. Accordingly, the voluntary payment rule bars any claim of damages for Wells Fargo's purported breach of contract.

> **E.     There Is No Claim For Negligence**

Plaintiffs also cannot establish a claim for negligence (Count IV) for several reasons.

### 1.    The Negligence Claim Is Barred By The Economic Loss Doctrine

First, as noted above, "[t]he economic loss doctrine prevents a plaintiff from recovering in tort for economic losses flowing from a contract."  Ross v. Celtron Intern., Inc., 494 F. Supp. 2d 288, 298 (D.N.J. 2007).  This is true for both fraud claims, see Ross, 494 F. Supp. 2d at 298, and negligence claims, see Saltiel v. GSI Consultants, Inc., 788 A. 2d 268, 281 (N.J. 2002) ("irrespective of the allegations in the complaint that sound in tort, plaintiff cannot convert basic contract claims into negligence claims").  Here, Plaintiffs' negligence claim arises solely from Mr. Zebrowski's contractual relationship with Wells Fargo.  Therefore, the economic loss doctrine precludes Plaintiffs' negligence claim.

### 2.    Wells Fargo Owed No Duty To Plaintiffs

"'To recover under a negligence theory, it is paramount that a defendant first owes the plaintiff a duty.'"  Donleavy v. Casey, 2006 WL 3770883, *2 (N.J. Super. App. Div. Dec. 26, 2006) (quoting Kernan v. One Washington Park Urban Renewal Assoc., 154 N.J. 437, 445 (1998)).  It is well-established in New Jersey that a lender does not owe a legal duty to a borrower, even if the borrower is a consumer.  See Donleavy, 2006 WL 3770883, at *2 ("the interests of the parties on the opposite side of a loan transaction are inherently adversarial," and, as such, no duty can be owed by the bank to a borrower); United Jersey Bank v. Kensey, 306 N.J. Super. 540, 553 (App. Div. 1997) (same).  Here, Plaintiffs' negligence claim fails because Wells Fargo owed them no duty.  As such, there is no negligence claim.[12]

---

[12]    Moreover, as discussed throughout the Motion, there is no evidence of record to suggest that Wells Fargo acted unreasonably under the circumstances, or that Plaintiffs suffered any damages.

F.     <u>Wells Fargo Acted In Good Faith</u>

Plaintiffs' claim that Wells Fargo' breached the covenant of good faith and fair dealing (Count V) also fails because the undisputed facts in this case show that Wells Fargo acted in good faith throughout its dealings with Plaintiffs.

Although New Jersey law implies a covenant of good faith and fair dealing in every contract, it "does not operate to alter the clear terms of an agreement and may not be invoked to preclude a party from exercising its express rights under such an agreement." <u>Fields v. Thompson Printing Co., Inc.</u>, 363 F. 3d 259, 271 (3d Cir. 2004) (applying New Jersey law). Additionally, to prevail on a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff *must* prove that the defendant acted in bad faith and with improper motive. <u>Wilson v. Amerada Hess Corp.</u>, 168 N.J. 236, 252 (2001) ("an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive … [w]ithout bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance."); <u>Elliot & Frantz, Inc. v. Ingersoll-Rand Co.</u>, 457 F. 3d 312, 328-30 (3d Cir. 2006) (same; affirming grant of summary judgment where factual record contained only conclusory allegations of improper motive). "Such bad faith usually exists only where the defendant acts with the objective of preventing the plaintiff from receiving its reasonably expected fruits under the contract." <u>World Finer Foods, Inc. v. Archway Cookies, LLC</u>, 2007 WL 3349450, at * 6 (D.N.J. Nov. 7, 2007).

Here, there is simply no evidence to support Plaintiffs' claim that Wells Fargo acted in bad faith or with improper motive. The undisputed material facts show that Wells Fargo merely acted in accordance with the terms of the Mortgage when it created the escrow account, applied payments, attempted to workout the default, and initiated foreclosure. Finally, Wells Fargo only

reported the loan as delinquent after Mr. Zebrowski failed to make payments.  Therefore, Wells Fargo is entitled to summary judgment on Count V.

### G.      The NJCFA Claim Fails

Plaintiffs' claim under the New Jersey Consumer Fraud Act ("NJCFA") (Count X) also fails for the reasons set forth below.

### 1.      The NJCFA Claim Is Barred By The Economic Loss Doctrine

First, Plaintiffs' claim under the NJCFA is also barred by the economic loss doctrine because it relates only to the purported fraudulent *performance* of Wells Fargo in servicing Mr. Zebrowski's loan.  See Vukovich v. Haifa, Inc., 2007 WL 655597, *8 (D.N.J. Feb. 28, 2007) (concluding that the court could only consider claims of fraud in the *inducement* in evaluating NJCFA and common law fraud claims); Traverso v. Home Depot U.S.A., Inc., No. 07-1324, Doc. No. 11 (D.N.J. Oct. 23, 2007) (order granting motion to dismiss plaintiff's NJCFA claim under the economic loss doctrine because plaintiff had only asserted a claim of fraud in the performance of contractual duties).

### 2.      The NJCFA Has No Application To Improper Servicing Claims

The NJCFA claim also fails because that statute prohibits deceptive sales and advertising practices – something quite distinct from loan servicing.  Longo v. First Nat. Mortg. Sources, 2009 WL 313334, *6 (D.N.J. Feb. 6, 2009) (citing N.J.S. § 56:8-2).  See also Vort v. Hollander, 607 A. 2d 1339, 1342 (N.J. Super. App. Div. 1992) ("The purpose of the Consumer Fraud Act was to prevent deception, fraud or falsity … in connection with the *sale and advertisement* of merchandise and real estate.") (emphasis added).  Here, Plaintiffs have not alleged, let alone set forth evidence of, any impropriety in the "sale or advertisement" of the loan at issue.  See Am. Compl.

Plaintiffs' entire case is premised on Wells Fargo's alleged improper servicing of the loan.  However, as a matter of law, improper loan servicing does not give rise to liability under the NJCFA.  See Carmen v. Metrocities Mortg. Corp., 2009 WL 1416038, *7 (D.N.J. May 18, 2009) (holding that conduct relating to servicing of plaintiffs' mortgage loan – wrongful collection, demand of excess payments, and alleged credit defamation – could not give rise to a NJCFA claim); Longo v. First Nat. Mortg. Sources, 2009 WL 313334, *6 (D.N.J. Feb. 6, 2009) (granting summary judgment against loan servicer who did not sell or advertise mortgage loan at issue).

### 3.    Even Assuming The NJCFA Applies, There Is No Claim

Even assuming that it applies, Plaintiffs cannot establish a NJCFA claim.  The elements of an NJCFA claim are "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."  Bosland v. Warnock Dodge, Inc., 964 A. 2d 741, 749 (N.J. 2009).  There simply is no evidence of unlawful or deceptive conduct by Wells Fargo.  Indeed, at all times, Wells Fargo complied with applicable law and acted pursuant to its rights under the Mortgage.

Moreover, Plaintiffs did not suffer an ascertainable loss.  An ascertainable loss "occurs when a consumer receives less than what was promised."  Hoffman v. Asseenontv.Com, Inc., 962 A. 2d 532, 537 (N.J. Super. App. Div. 2009).  There is no evidence of record to demonstrate that Wells Fargo's conduct was inconsistent with the justified expectations of either party.  Therefore, the NJCFA claim fails.

### H.    There Is No RESPA Claim

Finally, Plaintiffs' claim under the Real Estate Settlement Procedures Act ("RESPA") also has no merit.

- 28 -

### 1.    There Is No Private Right Of Action For Violations of § 10

As a threshold matter, there is no private right of action for the purported RESPA violations which Plaintiffs have alleged.  Although unclear, Plaintiffs' theory of liability under RESPA appears to rest on the allegation that Wells Fargo improperly established the escrow account without proper notification and erroneously accounted for escrow items.  See Am. Compl. ¶¶ 15-19, 28-44, 94.  These claims fail for the simple reason that there is no private right of action for violations of Section 10 of RESPA, which sets forth a lender's duty to, inter alia, provide timely disclosures of escrow creations and accountings of escrow disbursements.  See Hardy v. Regions Mortg., Inc., 449 F. 3d 1357, 1360 (11th Cir. 2006) (holding that no implied private cause of action exists under Section 10 of RESPA); Clayton v. Raleigh Fed. Sav. Bank, 107 F. 3d 865 (4th Cir. 1997) (same); State of La. v. Litton Mortg. Co., 50 F. 3d 1298, 1302 (5th Cir. 1995) (same); Allison v. Liberty Sav., 695 F. 2d 1086, 1091 (7th Cir. 1982) (same); Herrmann v. Meridian Mortg. Corp., 901 F. Supp. 915, 923 (E.D. Pa. 1995) (same).  For this reason alone, Plaintiffs' RESPA claim fails.

### 2.    Wells Fargo Properly Reestablished The Escrow Account

Further, even assuming a private right of action exists for Plaintiffs' alleged RESPA claim, Wells Fargo had a right to create the escrow account under the express terms of the Mortgage if Plaintiffs failed to pay their taxes.  See Argument § D(2)(a), supra (quoting Mortgage, Ex. 10, at § 3).  It is undisputed that Plaintiffs failed to make their tax payments due October 2005 and January 2006.  See JZ dep. at 56:23-24, 57:1-7, 60:12-19; Golden Aff. at ¶ 10; 2nd Req. Admiss. No. 7-8.

Wells Fargo was notified that the taxes were delinquent and, on or about January 10, 2006, and again on February 16, 2006, sent letters to Plaintiffs' residence[13] requesting proof of payment of the delinquent taxes.  Golden Aff. at  Ex. B, C; 1st Req. Admiss. No. 1-2.  Wells Fargo offered to assist Plaintiffs by paying the past due taxes, but warned that an escrow account[14] would be established under that scenario:

> If you have not made this tax payment, we can assist you by paying the full amount of the past due taxes, including all applicable interest/penalty due.   An escrow account will be established on your behalf for the collection of the advance, as well as all future tax bills.   Your monthly mortgage payment will increase to repay the advance and to collect for a monthly escrow deposit.

See Golden Aff. at Ex. B, C (emphasis added).  Plaintiffs failed to respond to both letters, and never sent proof of payment of the property tax arrears.  Golden Aff. at ¶ 13; 2nd Req. Admiss. No. 1-2, 4-5, 7-8.

Therefore, based on the express terms of the Mortgage, Note, the January 10, 2006 and February 16, 2006 letters, it is clear that Wells Fargo acted properly and within its rights by establishing an escrow account for the payment of future taxes.

---

[13]     RESPA expressly provides that "mailing of documents shall be deemed to be satisfied by placing the document in the mail (**whether or not received by the addressee**) addressed to the addresses stated in the loan application or in other information submitted to or obtained by the lender at the time of loan application …"  RESPA Reg. X, 24 C.F.R. § 3500.11 (emphasis added); cf. Hanger v. U.S., 285 U.S. 427, 430 (1932) (evidence of proper mailing "creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed.").   Moreover, at his deposition, Mr. Zebrowski stated that mail service at his home was uninterrupted between 2005-2007.  JZ dep. at 19:13-24.

[14]     An escrow account is defined by Regulation X to RESPA as "any account that a servicer establishes or controls on behalf of a borrower to pay taxes, insurance premiums (including flood insurance), or other charges with respect to a federally related mortgage loan, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay."  24 C.F.R. § 3500.17(b).

### 3.   The Escrow Account Statements Were Truthful And Accurate

Moreover, Wells Fargo complied with Section 10(a) of RESPA by sending a timely Escrow Account Statement to Plaintiffs' residence.  Wells Fargo sent the Escrow Disclosure Statement and Notice of New Mortgage on March 15, 2006, well in advance of the 45 day deadline under RESPA.  See 12 U.S.C. § 2609(c)(1)(a) & (b); Escrow Disclosure, Ex. 14 hereto; Golden Aff. at ¶ 17.

Contrary to Plaintiffs' claim of accounting error, there is also nothing inaccurate about the escrow disclosure; it fully complies with RESPA.  The Escrow Disclosure identifies a negative beginning balance of $5,455.26, the amount which Wells Fargo had paid for taxes and penalties due October 2005, January 2006, and April 2006.  See Golden Aff. at ¶¶ 15-16.  The Escrow Disclosure also identifies the escrow account shortage as $6,793.34, which is defined by Regulation X as the "amount by which a current escrow account balance falls short of the target balance at the time of escrow analysis."  24 C.F.R. § 3500.17(b); Escrow Disclosure.  That amount was properly calculated.

RESPA permits a lender to hold in escrow:

> [T]he sum of (A) one-twelfth of the total amount of the estimated taxes, insurance premiums and other charges which are reasonably anticipated to be paid on dates during the ensuing twelve months which dates are in accordance with the normal lending practice of the lender and local custom, provided that the selection of each such date constitutes prudent lending practice, plus (B) such amount as is necessary to maintain an additional balance in such escrow account not to exceed one-sixth of the estimated total amount of such taxes, insurance premiums and other charges to be paid on dates, as provided above, during the ensuing twelve-month period: *Provided, however,* That in the event the lender determines there will be or is a deficiency he shall not be prohibited from requiring additional monthly deposits in such escrow account to avoid or eliminate such deficiency.

See 12 U.S.C. § 2609(a)(2) (emphasis in original); 24 C.F.R. § 3500.17(c)(1)(i).

### a.   *Projected Tax Liabilities*

The Escrow Disclosure clearly itemizes Plaintiffs' projected tax liabilities: quarterly anticipated City Taxes totaling $7,193.79.  See Escrow Disclosure.  $7,193.79 divided over a twelve month period results in payments of $599.48 per month.  Id.  That amount represented the monthly escrow deposit for the payment of future taxes.

### b.   *Escrow Account Shortage*

To determine the remainder of the escrow account shortage, Wells Fargo compared the projected account balance to the required escrow account balance.  To show the borrower the computation, Wells Fargo used a chart:

| Month | Payments to Escrow | Payments from Escrow | Description | Projected Escrow Balance | Required Escrow Balance |
|---|---|---|---|---|---|
|  |  |  | Beginning | -$5,455.26 | $1,338.08 |
| May '06 | $599.48 |  |  | -$4,855.78 | $1,937.56 |
| June '06 | $599.48 |  |  | -$4,256.30 | $2,537.04 |
| July '06 | $599.48 | $1,868 | City Tax | -$5,524.82 | $1,268.52 |
| Aug '06 | $599.48 |  |  | -$4,925.34 | $1,868.00 |
| Sep '06 | $599.48 |  |  | -$4,325.86 | $2,467.48 |
| **Oct '06** | **$599.48** | **$1,868** | **City Tax** | **-$5,594.38** | **$1,198.96** |
| Nov '06 | $599.48 |  |  | -$4,994.90 | $1,798.44 |
| Dec '06 | $599.48 |  |  | -$4,395.42 | $2,397.92 |
| Jan '07 | $599.48 | $1,868 | City Tax | -$5,524.84 | $1,268.50 |
| Feb '07 | $599.48 |  |  | -$4,925.36 | $1,867.98 |
| Mar '07 | $599.48 |  |  | -$4,325.88 | $2,467.46 |
| Apr '07 | $599.48 | $1,868 | City Tax | -$5,455.29 | $1,338.05 |

Escrow Disclosure. (emphasis in original)

The Required Escrow Balance column lists the balances Wells Fargo would hold if there was no deficiency.  The Projected Escrow Balance shows the balances on the escrow account with the deficiency.  The largest escrow shortage, based on monthly escrow payments of $599.48 and no payments towards deficiency, occurs in October after the property tax is paid.  The projected shortage at that time would be $5,594.38.  RESPA permits a servicer to maintain a

two-month (or 1/6 of one year) cushion; for Mr. Zebrowski's loan, that amount would be $1,198.46 ($599.48 x 2).  See 12 U.S.C. § 2609(a)(2); 24 C.F.R. § 3500.17(c)(1)(i).  The lowest permitted balance therefore would be $1,198.46, two months payment, which would occur after Plaintiffs' property taxes were paid in October 2006.

To determine the escrow shortage, therefore, Wells Fargo added the permitted two-month cushion ($1,198.46) to the projected escrow shortfall ($5,594.38) to determine what was needed to bring the escrow account current immediately, $6,793.34.  The Escrow Disclosure clearly lists this amount as the projected escrow shortage.

In short, there was no inaccurate accounting or disclosure of the escrow amount due for Mr. Zebrowski's loan.

## V.    <u>CONCLUSION</u>

For all the reasons set forth above, Wells Fargo Bank, N.A. respectfully requests that the Court enter summary judgment in its favor and against Plaintiffs as to all remaining Counts of the Amended Complaint.

Respectfully submitted,

<u>s/ Nipun J. Patel</u>
Henry F. Reichner
Nipun J. Patel
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone:  (215) 851-8100

*Attorneys for Defendant*
*Wells Fargo Bank, N.A.*

Dated: October 30, 2009

**REED SMITH** LLP
*Formed in the State of Delaware*
Henry F. Reichner, Esquire
Nipun J. Patel, Esquire
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7301
Telephone No. (215) 851-8100
Facsimile No. (215) 851-1420
hreichner@reedsmith.com
npatel@reedsmith.com

*Attorneys for Defendant Wells Fargo Bank, N.A.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **JAMES AND MELISSA ZEBROWSKI,** | : | **DOCUMENT ELECTRONICALLY FILED** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 07-5236** |
| | : | |
| **WELLS FARGO BANK, N.A., as successor In interest to Wells Fargo Home Mortgage,** | : | **CERTIFICATE OF SERVICE FOR MOTION FOR SUMMARY JUDGMENT** |
| **Defendant.** | : | |

         I HEREBY CERTIFY THAT, on October 30, 2009, I caused a copy of the foregoing

Motion for Summary Judgment of Wells Fargo Bank, N.A. to be served via ECF and regular

mail upon counsel of record for Plaintiffs, addressed as follows:

                Matthew B. Weisberg, Esquire
                **Prochniak Weisberg, P.C.**
                7 S. Morton Avenue
                Philadelphia, PA  19070


                                *s/ Nipun J. Patel*
                                Nipun J. Patel