# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAMES AND MELISSA ZEBROWSKI,<br><br>   Plaintiffs,<br><br>   v.<br><br>WELLS FARGO BANK, N.A., as successor<br>in interest to Wells Fargo Home Mortgage,<br><br>   Defendant. | **DOCUMENT ELECTRONICALLY FILED**<br><br>**CIVIL ACTION NO. 07-5236** |

## DEFENDANT WELLS FARGO BANK, N.A.'S
## REPLY MEMORANDUM OF LAW
## <u>IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

**REED SMITH LLP**
*Formed in the State of Delaware*
Henry F. Reichner, Esquire
Nipun J. Patel, Esquire
2500 One Liberty Place
1650 Market Street
Philadelphia, PA  19103-7301
Telephone No. (215) 851-8100
Facsimile No.  (215) 851-1420
hreichner@reedsmith.com
npatel@reedsmith.com

*Attorneys for Defendant*
*Wells Fargo Bank, N.A.*

Dated: February 23, 2010

## <u>TABLE OF CONTENTS</u>

Table of Authorities………………………………………………………………… iii

I.  <u>INTRODUCTION</u> ...................................................................................1

II. <u>ADDITIONAL FACTS PERTINENT TO THIS MOTION</u> ...............................1

    A.  A Judgment In Mortgage Foreclosure Was Entered In Favor of Wells
        Fargo While The Instant Motion Was Pending ...........................................1

III. <u>ARGUMENT</u> .......................................................................................2

    A.  Res Judicata Bars Plaintiffs' Remaining Claims ......................................2

        1.  The Foreclosure Judgment Was Valid, Final, And On The Merits ............3

        2.  This Case Involves The Same Parties As The Foreclosure Case.................3

        3.  The Claims In This Case Grew Out Of The Same Transaction
            Involved In The Foreclosure Case ................................................3

    B.  The Voluntary Payment Doctrine Applies To Bar Plaintiffs' Claim For
        Recoupment ......................................................................................6

    C.  The Economic Loss Doctrine Also Applies To Bar Plaintiffs' Negligence
        And NJCFA Claims ............................................................................7

    D.  Plaintiffs' Negligence Claim Also Fails Because Wells Fargo Owed No
        Duty To Plaintiffs ..............................................................................7

    E.  The NJCFA Also Has No Application To A Claim For Improper Loan
        Servicing .........................................................................................8

    F.  There Is No Claim For Breach Of The Covenant Of Good-Faith And Fair
        Dealing ............................................................................................8

    G.  Plaintiffs' RESPA Claim Also Fails ......................................................9

        1.  Plaintiffs Should Be Estopped From Asserting A Claim Pursuant
            To 12 U.S.C. § 2605 At This Stage Of The Litigation ...............................9

        2.  There Was No RESPA Violation...........................................................11

            a.  The August 24th Letter Was Not A QWR....................................11

            b.  Wells Fargo Properly And Timely Responded To The
                August 24th Letter .......................................................13

        c.      There Is No Evidence That The Alleged RESPA Violations Caused Plaintiffs To Suffer Any Actual Damages ........................15

IV.     <u>CONCLUSION</u>................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

### CASES

<u>Associates Home Equity Services, Inc. v. Troup</u>, 778 A.2d 529
(N.J. Super. App. Div. 2001) .................................................................................4, 5

<u>Aurelio v. Board of Educ. of the Borough of Carteret</u>, 2009 WL 1794800
(D.N.J. Jun 23, 2009) ...........................................................................................10

<u>Belfer v. Merling</u>, 730 A.2d 434 (N.J. Super. App. Div. 1999) .....................................6

<u>Bell v. City of Philadelphia</u>, 275 Fed.Appx. 157 (3d Cir. 2008) .................................10

<u>Beneficial Fin. Co. of Atlantic City v.Swaggerty</u>, 432 A.2d 512 (N.J. 1981) ................5

<u>Bereczki v. Mansfield Tp.</u>, 2005 WL 3454297 (D.N.J. Dec. 13, 2005) .......................10

<u>Bieber v. Sovereign Bank</u>, 1996 WL 278813 (E.D. Pa. May 23, 1996) .........................3

<u>Cahalan v. Ameriquest Mortg. Co.</u>, 2006 WL 1312961 (W.D. Pa. May 10, 2006) ........3

<u>Carmen v. Metrocities Mortg. Corp.</u>, 2009 WL 1416038 (D.N.J. May 18, 2009) .......8, 9

<u>Challenger v. U.S. Bank</u>, 2009 WL 708116 (D.N.J. Mar. 13, 2009)............................15

<u>Clermont v. Brown</u>, 2009 WL 5205422 (D.N.J. Dec. 23, 2009) ...................................6

<u>Cogdell v. Hospital Center at Orange</u>, 560 A.2d 1169 (1989) .....................................4

<u>Donleavy v. Casey</u>, 2006 WL 3770883 (N.J. Super. App. Div. Dec. 26, 2006) ............8

<u>First Valley Leasing, Inc. v. Goushy</u>, 795 F. Supp. 693 (D.N.J. 1992)..........................7

<u>Flammia v. Maller</u>, 169 A.2d 488 (N.J. Super. App. Div. 1961) ...................................6

<u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312 (11th Cir. 2004)...........................9

<u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906 (3d Cir. 1985).............................................6

<u>Hulmes v. Honda Motor Co.</u>, 924 F. Supp. 673 (D.N.J. 1996) .....................................2

<u>In re Lewison Bros.</u>, 162 B.R. 974 (Bkrtcy. D.N.J. 1993) ........................................4, 5

<u>Joan Ryno, Inc. v. First Nat'l. Bank</u>, 506 A.2d 762 (N.J. Super. App. Div. 1986).........4

Jones v. Select Portfolio Servicing, Inc., 2008 WL 1820935 (E.D. Pa. Apr. 22, 2008)...............13

Katz v. Dime Sav. Bank, FSB, 992 F. Supp. 250 (W.D.N.Y. 1997)..............................................15

Kee v. Fifth Third Bank, 2009 WL 735048 (D. Utah Mar. 18, 2009)...........................................12

Kramer v. Kubicka, 2006 WL 1644825 (D.N.J. June 9, 2006) ......................................................3

Lal v. Nix, 935 F. Supp. 578 (E.D. Pa. 1996)................................................................................1

Leisure Technology-Northeast, Inc. v. Klingbeil Holding Co., 349 A.2d 96
    (N.J. Super. App. Div. 1975)....................................................................................................4

Lubrizol Corp. v. Exxon Corp., 929 F.2d 960 (3d Cir. 991) ........................................................4

Marrese v. Am. Acad. Of Orthopaedic Surgeons, 470 U.S. 373 (1985) .......................................2

McLean v. GMAC Mortg. Corp., 595 F. Supp. 2d 1360 (S.D. Fla. 2009)...................................15

Moore v. F.D.I.C., 2009 WL 4405538 (N.D. Ill. Nov. 30, 2009)................................................12

Oliver v. American Home Mortg. Servicing, Inc.,
    2009 WL 4129043 (D.N.J. Nov. 19, 2009) .............................................................................4

Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238 (3d Cir. 1999)..............................8, 9

Rubenstein v. Dovenmuehle Mortg., Inc., 2009 WL 3467769 (E.D. Pa. Oct. 28, 2009)..13, 14, 15

Steele v. Chase Manhattan Mortg. Corp., 2005 WL 2077271 (E.D. Pa. Aug. 26, 2005)..............12

Sun NLF Ltd. Partnership v. Sasso, 713 A.2d 538 (N.J. Super. App. Div. 1998)..........................4

Tagayun v. Citibank, N.A., 2006 WL 5100512 (D.N.J. June 9, 2006) ...............................2, 3, 4

Traverso v. Home Depot U.S.A., Inc., No. 07-1324, Doc. No. 11 (D.N.J. Oct. 23, 2007)
    (Trial Court Order) ....................................................................................................................7

Tucker v. Union of Needletrades, Indus. & Textile Employees, 407 F.3d 784
    (6th Cir. 2005) .....................................................................................................................9, 10

Vort v. Hollander, 607 A.2d 1339 (N.J. Super. App. Div. 1992)..................................................7

Vukovich v. Haifa, Inc., 2007 WL 655597 (D.N.J. Feb. 28, 2007)...............................................7

Watkins v. Resorts Int'l Hotel and Casino, Inc., 591 A.2d 592 (N.J. 1991)..................................2

**STATUTES**

Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 <u>et</u> <u>seq.</u> .................... passim

28 U.S.C. § 1738 (2000) .................................................................................................................2

**OTHER AUTHORITIES**

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and</u>
  <u>Procedure</u> (3d ed. Supp. 2005) .............................................................................................10

## I.     INTRODUCTION

Plaintiffs' opposition to Wells Fargo's Motion for Summary Judgment admits each and every fact submitted by Wells Fargo as true, offers no new facts of record, makes unsupported legal arguments, and attempts to assert a new theory of liability under RESPA which had never been raised prior to the close of discovery or in the nearly 2 and a half years since this lawsuit was filed.  Moreover, each of Plaintiffs' remaining claims are now barred under principles of *res judicata* because a foreclosure judgment was recently entered against Plaintiffs with respect to the Mortgage at issue.  Accordingly, summary judgment on each of Plaintiffs' remaining claims should be entered in favor of Wells Fargo.

## II.    ADDITIONAL FACTS PERTINENT TO THIS MOTION

### A.     A Judgment In Mortgage Foreclosure Was Entered In Favor of Wells Fargo While The Instant Motion Was Pending

In November 2008, Wells Fargo commenced a foreclosure action against Plaintiffs with respect to the Mortgage at issue in the Superior Court of New Jersey, Gloucester County (case no. F-45262-08) (the "Foreclosure Case").  See Foreclosure Case Docket, attached hereto as Exhibit 1.[1]  Plaintiffs did not assert any of the claims raised in this case by way of defense or counterclaim in the Foreclosure Case.  See Foreclosure Case Docket.

A final default judgment was entered against Plaintiffs in the Foreclosure Case on November 16, 2009 (after Wells Fargo had filed its Motion for Summary Judgment in this case).  A true and correct copy of the judgment in the Foreclosure Case is attached hereto as Exhibit 2.

---

[1]     The docket and judgment in the Foreclosure Case is subject to judicial notice because it is a matter of public record.  See Lal v. Nix, 935 F. Supp. 578, 579 (E.D. Pa. 1996) (considering state supreme court docket sheet as a matter of public record).

III.   **ARGUMENT**

A.   ***Res Judicata* Bars Plaintiffs' Remaining Claims**

Plaintiffs could have raised the very claims asserted in this case by way of defense or counterclaim in the Foreclosure Case.  Now, the Foreclosure Case has concluded, and judgment has been entered in favor of Wells Fargo.  *Res judicata* bars Plaintiffs' remaining claims because the preclusive nature of the foreclosure judgment prevents the assertion of defenses and claims that should and could have been raised in the Foreclosure Case.

"'The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such [s]tate . . . from which they are taken.'" Marrese v. Am. Acad. Of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) (quoting 28 U.S.C. § 1738 (2000)). The Court therefore "must look to New Jersey law to determine what preclusive effect the default judgment must have on this Court."  Tagayun v. Citibank, N.A., 2006 WL 5100512, *3 (D.N.J. June 9, 2006).

In applying New Jersey law, this Court has held that in order for an earlier judgment to have *res judicata* effect, the following elements must be met:

> "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one."

Tagayun, 2006 WL 5100512, at *4 (citing Hulmes v. Honda Motor Co., 924 F.Supp. 673, 682 n. 12 (D.N.J. 1996) and Watkins v. Resorts Int'l Hotel and Casino, Inc., 124 N.J. 398, 591 A.2d 592 (N.J. 1991)).

Each of the prerequisites for application of *res judicata* exist here, and therefore, Plaintiffs' remaining claims should be dismissed.

1.   The Foreclosure Judgment Was Valid, Final, And On The Merits

First, under New Jersey law, it is well-established that the foreclosure judgment entered in favor of Wells Fargo constitutes a valid, final judgment on the merits entitled to *res judicata* effect.  See Kramer v. Kubicka, 2006 WL 1644825, *3 (D.N.J. June 9, 2006) ("a default judgment is a valid and final adjudication on the merits and therefore has *res judicata* effect barring future litigation"), aff'd, 222 Fed.Appx. 184 (3d Cir. 2007); Tagayun v. Citibank, N.A., 2006 WL 5100512, *3 (same).

2.   This Case Involves The Same Parties As The Foreclosure Case

Second, the parties are sufficiently identical in this case and the foreclosure case for *res judicata* purposes.  Wells Fargo and Plaintiffs were parties to the Foreclosure Case.  See Ex. 2 (judgment obtained against James and Melissa Zebrowski[2]).

3.   The Claims In This Case Grew Out Of The Same Transaction Involved In The Foreclosure Case

Finally, this action and the foreclosure case constitute the "same action" for *res judicata* purposes because the claims raised in this case could and should have been raised in the foreclosure case.

---

[2]   Melissa Salvatore (nee Zebrowski) lacks standing to assert a claim against Wells Fargo in any event because she was not a borrower under the Mortgage.  Non-borrowers do not have standing to raise lender liability claims against the lender.  See Cahalan v. Ameriquest Mortg. Co., 2006 WL 1312961, *2 (W.D. Pa. May 10, 2006) (dismissing RESPA claim brought against lender by a non-borrower); Bieber v. Sovereign Bank, 1996 WL 278813, *5 (E.D. Pa. May 23, 1996) (same).

New Jersey employs the "entire controversy doctrine," which requires that a party "present in one suit all claims arising out of a single controversy." Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 965 (3d Cir. 991) (citing Cogdell v. Hospital Center at Orange, 560 A.2d 1169 (N.J. 1989)). Under the entire controversy doctrine, the failure of a party to raise "all affirmative claims that [it] might have against another party, including counterclaims and defenses" will result in preclusion of those claims in a separate action. Tagayun, 2006 WL 5100512, at *4 ("New Jersey Civil Practice Rule 4:7-1 regarding mandatory and permissive counterclaims, requires that parties to an action must plead such claims as required under New Jersey's Entire Controversy Doctrine or 'thereafter be precluded from bringing any action for such claim…'"); see also Lubrizol, 929 F.2d at 965.

In the foreclosure context, the entire controversy doctrine applies to bar all "germane" claims or counterclaims that were not raised in a prior foreclosure action. See Oliver v. American Home Mortg. Servicing, Inc., 2009 WL 4129043, *3 (D.N.J. Nov. 19, 2009); In re Lewison Bros., 162 B.R. 974, 986 (Bkrtcy. D.N.J. 1993). Courts are to employ a "liberal rather than narrow approach" in determining what issues are "germane." Leisure Technology-Northeast, Inc. v. Klingbeil Holding Co., 349 A.2d 96, 99 (N.J. Super. App. Div. 1975).

Consequently, New Jersey courts have held that, in addition to defenses relating to the validity of the mortgage, "'any conduct of a mortgagee known to the mortgagor prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure could be raised as an equitable defense in the foreclosure,'" and is, therefore, "germane." Sun NLF Ltd. Partnership v. Sasso, 713 A.2d 538, 540 (N.J. Super. App. Div. 1998) (quoting Joan Ryno, Inc. v. First Nat'l. Bank, 506 A.2d 762 (N.J. Super. App. Div. 1986)) (emphasis added); See also, Associates Home Equity

Services, Inc. v. Troup, 778 A.2d 529, 540 (N.J. Super. App. Div. 2001) (a foreclosure action "is a quasi *in rem* procedure … to determine not only the right to foreclose, but also the amount due on the mortgage").

Applying these principles, New Jersey courts have held that claims for rescission of a mortgage <u>and</u> damages for recoupment of sums paid are "germane" counterclaims in foreclosure actions because they arise out of the same underlying loan transaction which serves as both the common source of liability to pay the debt and also provides correlative rights to borrowers under lender liability laws.  <u>See</u> <u>In re Lewison Bros.</u>, 162 B.R. at 987 (holding that mortgagors' request for disgorgement of funds and avoidance of liens based on lender liability claims were barred by *res judicata* because those issues were germane to prior foreclosure judgment and arose "out of the mortgage transaction"); <u>Beneficial Fin. Co. of Atlantic City v.Swaggerty</u>, 432 A.2d 512, 517 (N.J. 1981) (TILA recoupment defense was germane in a foreclosure action); <u>Troup</u>, 778 A.2d at 539 (holding that recoupment defenses, asserted by way of counterclaim, for alleged violations of the Fair Housing Act, Civil Rights Act, and the Law Against Discrimination, were "germane" because they arose out of the same underlying loan transaction).

Here, Plaintiffs' remaining claims seek (1) rescission of the mortgage, (2) recoupment of sums paid by Plaintiffs to Wells Fargo, and (3) damages for Wells Fargo's allegedly unlawful actions in servicing the loan -- all of which occurred <u>prior</u> to institution of the foreclosure case. These arguments go right to the heart of whether Wells Fargo was entitled to judgment in the foreclosure case and whether the amount claimed was the correct amount.  Therefore, these claims were "germane" in the Foreclosure Case.  As such, Plaintiffs are now barred under principles of *res judicata* from asserting claims that could and should have been raised in the Foreclosure Case.

**B.    The Voluntary Payment Doctrine Applies To Bar Plaintiffs' Claim For Recoupment**

Plaintiffs' remaining claims seek, <u>inter</u> <u>alia</u>, recoupment of sums paid to Wells Fargo. However, Plaintiffs are not entitled to recoupment because the voluntary payment doctrine bars recovery of money "knowingly and voluntarily paid on the ground there was no liability to pay it in the first instance." <u>Belfer v. Merling</u>, 730 A.2d 434, 441 (N.J. Super. App. Div. 1999).

Plaintiffs' assertion that they acted under duress is without merit because they acted on advice of counsel prior to tendering payment. <u>See</u> Def. Mot. for Summary Judgment Ex. 13 ("I have been advised by counsel … and am requesting an immediate resolution").  The opportunity to consult with counsel vitiates an economic duress claim.  <u>See</u> <u>Clermont v. Brown</u>, 2009 WL 5205422, *4 (D.N.J. Dec. 23, 2009) (citing <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 911-12 (3d Cir. 1985)).  Further, Plaintiffs' concede there was no fraud or extortion in connection with the servicing their loan.  See Pl.'s Response Br. at p. 1 (conceding withdrawal of fraud claim).

Moreover, Plaintiffs' conclusory allegation that payments were made under mistake is without merit because payments made "under a mistake or ignorance of law, but with full knowledge of the facts," cannot be recovered absent a showing of fraud or duress.  <u>Flammia v. Maller</u>, 169 A.2d 488, 498 (N.J. Super. App. Div. 1961).  Plaintiffs fail to articulate what, if any, payments were made based on a mistake as to a past or present existence of fact.  <u>See</u> Pl.'s Response Br. at p. 7.  There is no dispute that the amount actually paid by Plaintiffs to reinstate the loan was accurate.  <u>See</u> Def.'s Statement of Material Facts, ¶ 52 (admitted as true). Therefore, the voluntary payment doctrine applies to bar Plaintiffs' claim for recoupment.

### C.    The Economic Loss Doctrine Also Applies To Bar Plaintiffs' Negligence And NJCFA Claims

Plaintiffs' own cited case, <u>First Valley Leasing, Inc. v. Goushy</u>, recognizes that under New Jersey law, plaintiffs may not recover for economic damages under a negligence theory. 795 F.Supp. 693, 698 (D.N.J. 1992) ("tort principles, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident.").

As to Plaintiffs' claim under the NJCFA, Plaintiffs fail to recognize the well-established distinction between fraud claims arising out of fraud in the *inducement* or pre-contractual misrepresentations, as opposed to fraud in the *performance*.  <u>See</u> <u>Vukovich v. Haifa, Inc.</u>, 2007 WL 655597, *8 (D.N.J. Feb. 28, 2007) (under the economic loss doctrine, the court could only consider claims of fraud in the *inducement* in evaluating NJCFA and common law fraud claims); <u>Traverso v. Home Depot U.S.A., Inc.</u>, No. 07-1324, Doc. No. 11 (D.N.J. Oct. 23, 2007) (order granting motion to dismiss plaintiff's NJCFA claim under the economic loss doctrine because plaintiff had only asserted a claim of fraud in the performance of contractual duties).  Plaintiffs' NJCFA claim is related to loan servicing -- not origination.   Therefore, it is barred by the economic loss doctrine.[3]

### D.    Plaintiffs' Negligence Claim Also Fails Because Wells Fargo Owed No Duty To Plaintiffs

Plaintiffs' argument that Wells Fargo owed them a legal duty is unsupported by citation to any authority which contradicts the well-established rule under New Jersey law that a lender

---

[3]    This claim also fails because the NJCFA only prohibits deceptive "sales and advertising" practices.  <u>See</u> <u>Vort v. Hollander</u>, 607 A.2d 1339, 1342 (N.J. Super. App. Div. 1992). Plaintiffs do not allege any impropriety in the sale or advertisement (i.e. origination) of the loan.

does not owe a legal duty to a borrower, even if the borrower is a consumer.  See Donleavy v. Casey, 2006 WL 3770883, *2 (N.J. Super. App. Div. Dec. 26, 2006) ("'the interests of the parties on the opposite side of a loan transaction are inherently adversarial,' and, as such, no duty can be owed by the bank to a borrower).  For this additional reason, Plaintiffs' negligence claim fails.[4]

### E.   The NJCFA Also Has No Application To A Claim For Improper Loan Servicing

Plaintiffs' interpretation of Carmen v. Metrocities Mortg. Corp. is simply wrong.  Although Carmen held that an assignee-servicer may be held liable under the NJCFA claim for violating certain provisions of TILA, HOEPA, and RESPA relating to loan *origination*, it expressly held that the assignee-servicer's purported misconduct in *servicing* the loan could not give rise to an NJCFA claim.  2009 WL 1416038, *7 (D.N.J. May 18, 2009) ("Plaintiffs' allegations that Countrywide demanded excess payments … [and engaged in] credit defamation … does not give rise to a NJCFA claim").  Because Plaintiffs' claims in this action undisputedly arise of Wells Fargo's servicing activities, the NJCFA has no application.

### F.   There Is No Claim For Breach Of The Covenant Of Good-Faith And Fair Dealing

Plaintiffs have failed to set forth any facts to support their claim that Wells Fargo breached the covenant of good faith and fair dealing (Count V) and did not address any of the arguments raised by Wells Fargo in support of summary judgment.  Indeed, there is no evidence of record to suggest that Wells Fargo acted in bad-faith.  As such, Count V should be dismissed. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999) (dismissing

---

[4]   Moreover, there are no facts in the record to suggest that Wells Fargo acted unreasonably in servicing the loan, or that any act or omission by Wells Fargo caused damages.

§ 1983 claim where nonmoving party failed to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor).

G.   **Plaintiffs' RESPA Claim Also Fails**

Plaintiffs argue – for the first time – that Wells Fargo is liable for violation of RESPA's provisions pertaining to loan servicers' duties in responding to qualified written requests ("QWR").  See 12 U.S.C. § 2605(e).  As a preliminary matter, Plaintiffs should not be permitted, at this late stage, to advance a new theory of liability under RESPA which was never pled in the Complaint or Amended Complaint.  See Def. Mot. for Summary Judgment Exs. 1, 2.  Even if Plaintiffs were permitted to assert such a claim, Wells Fargo would still be entitled to summary judgment on the claim because (1) the August 24th letter was not a QWR, (2) Wells Fargo adequately responded in compliance with RESPA even it were a QWR, and (3) there is no evidence of actual damages.

1.   Plaintiffs Should Be Estopped From Asserting A Claim Pursuant To 12 U.S.C. § 2605 At This Stage Of The Litigation

In response to Wells Fargo's Motion for Summary Judgment, and for the first time in the nearly 2 and a half years since this lawsuit was filed, Plaintiffs allege that Wells Fargo did not adequately respond to a purported QWR sent to Wells Fargo on August 24, 2006.  See Def. Mot. for Summary Judgment Ex. 13.  Plaintiffs' failure to raise this argument earlier is fatal to their RESPA claim.

Once a case has progressed to the summary judgment stage, "'the liberal pleading standards under Swierkiewicz and [the Federal Rules] are inapplicable.'"  Tucker v. Union of Needletrades, Indus. & Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005) (quoting Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004)).  To prevent unfair surprise,

- 9 -

the "'non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion.'" Tucker, 407 F.3d at 788 (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (3d ed. Supp. 2005)). See also Bell v. City of Philadelphia, 275 Fed.Appx. 157, 160 (3d Cir. 2008) (a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment"); Aurelio v. Board of Educ. of the Borough of Carteret, 2009 WL 1794800, *5 n.1 (D.N.J. Jun 23, 2009) (same).

"At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)." Bell, 275 Fed.Appx. at 160 (3d Cir. 2008) (affirming grant of summary judgment as to a new theory of liability that was raised by plaintiff for the first time only in response to defendant's motion for summary judgment); Aurelio, 2009 WL 1794800, at *5 n.1 (refusing to consider claim raised for first time in opposition to summary judgment motion because it was not pled in the complaint); Bereczki v. Mansfield Tp., 2005 WL 3454297, *8 (D.N.J. Dec. 13, 2005) ("In her opposition, Plaintiff alleges fraud and negligent misrepresentation … However, this claim was not alleged in the complaint and cannot be raised for the first time in an opposition to a motion for summary judgment … Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of negligent misrepresentation and common law fraud.")

Here, there is no allegation in either the Complaint or the Amended Complaint pertaining to the August 24th letter and/or Wells Fargo's alleged failure to properly respond to that letter purportedly in violation of RESPA. See Def. Mot. at Exs. 1, 2. In fact, the Complaint and Amended Complaint make no mention of Plaintiffs sending Wells Fargo a QWR at any time, or that Wells Fargo failed to adequately respond to any QWRs sent by Plaintiffs.

Plaintiffs were aware, prior to filing the Complaint (and certainly prior to the close of discovery), of all of the facts surrounding the August 24th letter and Wells Fargo's response thereto, but failed to allege such facts in either of their two complaints and never filed a motion to amend.[5]  It is clear that Plaintiffs may not advance this new theory of liability for the first time in response to Wells Fargo's Motion for Summary Judgment.  For this reason alone, Wells Fargo is entitled to summary judgment on Plaintiffs' "new" RESPA claim.

> 2.    There Was No RESPA Violation

Even when considering Plaintiffs' RESPA claim on its merits, it still fails.

> a.    *The August 24th Letter Was Not A QWR*

Plaintiffs allege that the August 24th letter requested that Wells Fargo "(a) advise Plaintiff as to what Plaintiff accurately owes Defendant so that Plaintiff can reinstate; (b) cure any derogatory credit reporting; and (c) terminate Defendant's foreclosure against Plaintiff."  See Pl.'s Statement of Material Facts in Dispute, ¶ 3.  However, such inquiries, as a matter of law, can not be the subject of a QWR because they do not relate to the "servicing" of Plaintiffs' loan within the meaning of RESPA.

In order to trigger RESPA's provisions requiring a loan servicer to respond to certain borrower inquiries, the servicer must receive "a [QWR] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan …"  See 12 U.S.C. § 2605(e)(1)(A) (emphasis added).  RESPA makes clear that "servicing" involves two possible actions by the loan servicer: (1) "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan"; and (2) "making the payments of principal and interest and

---

[5]     Even if Plaintiffs so amended, any such amendment would have been futile as demonstrated below.

such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3) (emphasis added).

In a similar case, Moore v. F.D.I.C., the court held that a borrower's letter requesting "information regarding 'reinstatement of a mortgage which Plaintiffs have admitted was in default, and the amount of the delinquent mortgage payments due'" was not a QWR because it did not fall under either of § 2605's definitions of "servicing."  2009 WL 4405538, *4 (N.D. Ill. Nov. 30, 2009).  There, the court explained that:

> First, Plaintiffs' requests do not relate to the servicer's receipt of a 'scheduled periodic payment from a borrower pursuant to the terms of the loan.' See 12 U.S .C. § 2605(i)(3).  Their requests for information clearly do not involve an inquiry into the servicer's receipt of a scheduled payment; rather, they relate to information about the status of a defaulted mortgage loan and delinquent mortgage payments.  Similarly, the second possible definition is inapplicable because Plaintiffs' letters do not request information regarding the servicer making any payments with funds received from the borrower pursuant to the terms of the loan. See id. Thus, because their information requests do not relate to the 'servicing' of the loan, as the term is defined by RESPA, Plaintiffs' October 4, 2006, January 29, 2008, and March 28, 2008 letters are not [QWRs]

Moore, 2009 WL 4405538, at *4; cf. Kee v. Fifth Third Bank, 2009 WL 735048, *6 (D. Utah Mar. 18, 2009) (correspondence about validity of loan does not constitute a QWR); Steele v. Chase Manhattan Mortg. Corp., 2005 WL 2077271, *2 (E.D. Pa. Aug. 26, 2005) (granting summary judgment on RESPA claim where correspondence requested rescission of loan because such request did not relate to servicing).

As was the case in Moore, Plaintiffs' August 24th letter was not a QWR because it did not relate to (1) Wells Fargo's receipt of a scheduled periodic payment or (2) to Wells Fargo's

making of payments from funds received.[6]   Plaintiffs allege only that the August 24th letter related to a purported request by Plaintiffs for reinstatement and to challenge the validity of Wells Fargo's foreclosure.  As such, the August 24th letter did not relate to "servicing," and thus was not a QWR.  Therefore, Plaintiffs' RESPA claim fails on its merits.

> b.   *Wells Fargo Properly And Timely Responded To The August 24th Letter*

Assuming *arguendo* that the August 24th letter was a QWR, Wells Fargo properly complied with § 2605(e) by responding to it within sixty (60) business days of receipt.

Upon receipt of a QWR, a loan servicer complies with RESPA if it, within sixty (60) business days, "provide[s] the borrower with a written explanation or clarification that includes … a statement of the reasons for which <u>the servicer believes the account of the borrower is correct as determined by the servicer</u>" and the name and telephone number of a person who can provide assistance to the borrower.  <u>See</u> § 2605(e)(2)(B)(ii) (emphasis added).  There is no requirement under the statute that the servicer's response be objectively accurate.  <u>See</u>, <u>e.g.</u>, <u>Jones v. Select Portfolio Servicing, Inc.</u>, 2008 WL 1820935, *9 (E.D. Pa. Apr. 22, 2008) (dismissing RESPA claim premised on purportedly inaccurate payoff figure provided by servicer in response to alleged QWR because servicer provided a timely explanation as to why it believed payoff figure was correct and a name and telephone number of someone who could provide further assistance).  Indeed, "[n]owhere in the statute is there language about maintaining <u>accurate</u> records of tax and insurance escrow accounts." <u>Rubenstein v. Dovenmuehle Mortg.</u>,

---

[6]   Indeed, Plaintiffs do not dispute that the loan was in default because full payments on the loan had neither been received by Wells Fargo nor made by Plaintiffs since at least May 1, 2006.  Plaintiffs also do not dispute that Wells Fargo acted lawfully and in accordance with its rights under the Mortgage by re-establishing the escrow.

Inc., 2009 WL 3467769, *7 (E.D. Pa. Oct. 28, 2009) (dismissing RESPA § 2605 claim premised on purportedly inaccurate escrow accounting) (emphasis added).

Here, Wells Fargo sent two letters to Plaintiffs – on September 8, 2006, and November 13, 2006 – both within sixty (60) business days of August 24, 2006.[7]  See Golden Aff. Ex. N. The letters included the name and phone number for a contact person employed by Wells Fargo who could provide assistance to Plaintiffs.  See id.  Both the September 8, 2006 and November 13, 2006 letters provided an explanation as to why Wells Fargo believed Plaintiffs' account was in default and an explanation of the amount of delinquency.  Id.  Plaintiffs provided Wells Fargo with a check dated November 11, 2006 for $23,178.66 to reinstate the loan pursuant to an updated reinstatement quote provided in November.  See Golden Aff. ¶ 19, Ex. N.  There is no dispute that the reinstatement quote that Plaintiffs paid was accurate.[8]  See Def.'s Statement of Material Facts ¶ 52 (admitted as true).

In short, Wells Fargo adequately responded to Plaintiffs' purported QWR in compliance with RESPA.

---

[7]   Wells Fargo's responses were also sent within sixty (60) business days of August 22, 2006, the date written on the letter.

[8]   Thus, Plaintiffs' contention that Wells Fargo "double-dipped" is irrelevant and without merit.  Even still, Plaintiffs' calculation of the escrow deficiency as of September 2006 is also incorrect because it fails to account for the increase in deficiency accrued in the five (5) months following May 1, 2006 because Wells Fargo advanced additional amounts to escrow for property taxes due August 2006 and October 2006.  Therefore, it was permitted to collect additional advance amounts to cover the increased deficiency.  See 12 U.S.C. § 2609(a)(2); 24 C.F.R. § 3500.17(c)(1)(i).

c.   *There Is No Evidence That The Alleged RESPA Violations Caused*
*Plaintiffs To Suffer Any Actual Damages*

Finally, even if Plaintiffs can show that Wells Fargo did not adequately respond to their purported QWR (which they can not), their claim under § 2605 still fails because there is no evidence of any actual damages which were caused by Wells Fargo's alleged violation.

The existence of actual damages and proof that such damages were caused by the alleged RESPA violation is an absolute prerequisite to liability.  See Challenger v. U.S. Bank, 2009 WL 708116, *4 (D.N.J. Mar. 13, 2009) (dismissing § 2605 claim absent assertion of actual damages or causal link between alleged violation and damages); Rubenstein, 2009 WL 3467769, at *7-8 (holding that absent evidence of actual damages and causation, there can be no RESPA violation); McLean v. GMAC Mortg. Corp., 595 F.Supp.2d 1360, 1374 (S.D. Fla. 2009) (same). Importantly, "negative reporting to the credit agencies alone is insufficient to establish damages" under § 2605(e) absent evidence that such reporting caused a denial of credit or other pecuniary loss.  See McLean, 595 F.Supp.2d at 1373-74; Katz v. Dime Sav. Bank, FSB, 992 F.Supp. 250, 257 (W.D.N.Y. 1997) (same).

Simply put, there is no evidence of record to suggest that the allegedly inaccurate reinstatement quote provided by Wells Fargo in its September 8, 2006 letter caused Plaintiffs to suffer any actual damages.  The Mortgage was already (validly) in foreclosure as a result of Plaintiffs undisputed failure to make payments.  Plaintiffs received an updated reinstatement quote from Wells Fargo within sixty (60) days of sending their purported QWR and paid that on or about November 13, 2006.  It is undisputed that the amount paid to reinstate was accurate.

Further, there is no evidence of record that (a) Wells Fargo negatively reported Plaintiffs during the QWR response period, (b) even if Wells Fargo had negatively reported Plaintiffs, that Plaintiffs' suffered a denial of credit or other pecuniary loss as a result of the alleged inadequate

- 15 -

response, or (c) that Plaintiffs suffered any emotional injury as a result of the alleged inadequate response.

For this additional reason, Plaintiffs' RESPA claim fails.

## IV.     <u>CONCLUSION</u>

For all of the reasons set forth above, Defendant Wells Fargo Bank, N.A. respectfully requests that the Court enter summary judgment in its favor and against Plaintiffs as to all remaining Counts of the Amended Complaint.

Respectfully submitted,


*s/ Nipun J. Patel*
Henry F. Reichner
Nipun J. Patel
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone:  (215) 851-8100

*Attorneys for Defendant*
*Wells Fargo Bank, N.A.*

Dated: February 23, 2010

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **JAMES AND MELISSA ZEBROWSKI,** | : | **DOCUMENT ELECTRONICALLY FILED** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 07-5236** |
| | : | |
| **WELLS FARGO BANK, N.A., as successor In interest to Wells Fargo Home Mortgage,** | : | **CERTIFICATE OF SERVICE** |
| | : | |
| **Defendant.** | : | |

I HEREBY CERTIFY THAT, on February 23, 2010, I caused a true and correct copy of the foregoing Reply Memorandum of Law of Defendant Wells Fargo Bank, N.A. in Further Support of its Motion for Summary Judgment, together with Defendant's Response To Plaintiffs' Statement of Material Facts In Dispute. to be served via ECF and regular mail upon counsel of record for Plaintiffs, addressed as follows:

Matthew B. Weisberg, Esquire
**Prochniak Weisberg, P.C.**
7 S. Morton Avenue
Philadelphia, PA  19070

_s/ Nipun J. Patel_
Henry F. Reichner
Nipun J. Patel
**REED SMITH LLP**
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301
Telephone:  (215) 851-8100

_Attorneys for Defendant_
_Wells Fargo Bank, N.A._